615 So.2d 476 (1993)
Leonard ADAMS, et al.
v.
CSX RAILROADS, et al.
No. 92-CA-1077.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1993.
*478 Harry S. Hardin, III, Raymond J. Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellants.
David W. Robinson, Baton Rouge, and Henry T. Dart, Metairie, for appellees.
Before BYRNES, CIACCIO and LANDRIEU, JJ.
CIACCIO, Judge.
This is an appeal from a ruling of the trial court granting plaintiffs' motion for certification of these consolidated cases as a class action. We affirm the trial court's judgment.

Facts
This dispute arose out of an incident which began on September 9, 1987 at approximately 1:50 a.m., when a chemical known as butadiene leaked from the bottom opening of a railroad tank car while it was situated on a railroad interchange in eastern New Orleans. The chemical spread outward from the tank car and found an ignition source, which resulted in a flash back to the tank car and the subsequent consumption of the chemical by the fire. The fire caused numerous explosions in the enclosed stormwater sewer system; however, there was no explosion of the tank car itself.
The fire continued to burn for almost two days, and was contained by the New Orleans Fire Department. In an effort to protect against effects of the possible explosion of the tank car, the surrounding neighborhood was evacuated by the police department. The fire was eventually extinguished *479 on September 10, 1987, and the residents of the area returned to their homes.
Plaintiffs, Leonard Adams, Michael Noal, Virginia Phillips and Debra Black, brought this action on their own behalf and on behalf of residents of Orleans Parish and others who suffered damages as a result of the chemical spillage. Further, plaintiffs' original petition averred class representation on behalf of all residents as members of a class.
Subsequent to the filing of this action, over 85 other lawsuits were filed by thousands of plaintiffs claiming damages as a result of the train incident. Named as defendants in these suits were the designer and manufacturer of the tank car, the owner and lessee of the car, the shipper of the butadiene, the loaders and carriers of the shipment, and the owner of the railroad track on which the tank car was situated at the time of this incident. These suits were subsequently consolidated into the section of the trial court where the present suit was originally filed.
Pursuant to court order, plaintiffs and defendants formed committees of attorneys for the management of this massive litigation. The Plaintiffs' Management Committee subsequently filed a master petition, attaching a listing of those suits in which the plaintiffs and their attorneys had elected to subscribe to the allegations of this petition.
In this master petition, the plaintiffs' representatives sought compensatory relief based on La.C.C. arts. 667, 2315, 2317 and 2324, and exemplary relief based on La.C.C. art. 2315.3. The plaintiffs further petitioned for certification of a plaintiff class for a class action pursuant to La.C.C.P. arts. 591-592.
On July 11, 1990, the Plaintiffs' Management Committee filed a Motion for Class Certification, proposing a class of plaintiffs defined as:
All persons or entities who resided, owned real property, owned or operated businesses. [sic] were employed in or who resided or were physically present in the Parish of Orleans, State of Louisiana, on September 9, 1987, and who sustained damage by reason of the leakage of butadiene from a railroad tank car, and the consequent fire and/or explosion, on the railroad interchange track in the city of New Orleans on said date. [sic] and who comply with all orders of the Court regarding filing notices and proofs of claims.
Defendants opposed the class, and pursuant to court order, plaintiffs subsequently amended the pleadings designating a total of 25 class representatives, and proposing that the class be subdivided into sub classes as follows:

Sub-Class A: Those persons who sustained ascertainable and legally compensable psychological damage, including mental anguish and inconvenience, as a result of the incident.

Sub-Class B: Those persons who sustained ascertainable and legally compensable physical injuries, including death, as a result of the incident.

Sub-Class C: Those persons or entities who sustained ascertainable and legally compensable economic losses as a result of the incident, including medical expenses, lost wages, loss of business income, property damage, property value diminution and costs in evacuation.

Sub-Class D: Those persons having claims cognizable in any of the other sub classes but who are legally incompetent to prosecute their claims or to stand in judgment therein.
After a lengthy process of discovery, a class certification hearing was held on May 20, 1991. On June 26, 1991, the trial court issued the following judgment:
After considering the exhibits, memoranda and the law,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein certifying this matter as a class action with four sub-classes designated as follows: sub-class 1 are those cases involving physical injuries; sub class 2 are those cases involving psychological injuries; sub-class 3 are those cases involving economic losses; sub class *480 4 is designated as a residual sub class to protect the interests of minors, incompetents, or survivors of deceased claimants, as the case may be.
Defendants sought a new trial, which was denied, and the trial court assigned the following reasons for judgment:
The Court concludes that judicial economy and efficiency requires that this matter be certified as a class action and proceed accordingly.
This suspensive appeal followed.[1]

Discussion
The sole issue presented for our review is the propriety of the certification of the class action.
The requirements for certification of a class action are established by La.C.C.P. arts. 591(1)[2] and 592[3]:
1. A class so numerous that joinder is impracticable, and
2. The joinder as parties to the suit one or more persons who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class, and
3. A "common character" among the rights of the representatives of the class and the absent members of the class.
Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 148 (La.1975); Williams v. State of Louisiana, 350 So.2d 131 (La.1977); McCastle v. Rollins Environmental Services, 456 So.2d 612, 616 (La.1984).
The burden of proof is upon the plaintiffs seeking to maintain the class action to establish that the statutory criteria have been met. Phillips v. Orleans Parish School Board, 541 So.2d 226 (La.App.4th Cir.1989).
At the outset, appellants assert that mass accident cases such as the one here are particularly inappropriate for class action treatment because such cases raise a multitude of individual issues which cannot be adjudicated on a class-wide basis. In support of this position, appellants cite Rule 23 of the Federal Rules of Civil Procedure and several federal and out-of-state cases.
However, this assertion was squarely answered in Williams v. State, supra, 350 So.2d at 136-137, where the court held that the Louisiana class action device is distinct from the action set forth in federal procedure. Further, in Livingston Parish Police Jury v. Ill. Cent. Gulf Railroad, 432 So.2d 1027, 1029 (La.App. 1st Cir.1983), the court noted that not only is Louisiana class action procedure more flexible than Federal Rule 23, but it also encompasses most situations involving multiple claims arising from a single incident, assuming that the criteria for a class action are met.
We find this reasoning to be persuasive, and find a long line of Louisiana cases in which class actions have been certified in situations involving mass tort actions. Livingston, supra; Williams v. State supra; Millet v. Rollins v. Environ Services of La., 428 So.2d 1075 (La.App. 1st Cir.), writ denied, 433 So.2d 153 (La.1983); McCastle, supra; Ellis v. Georgia-Pacific Corp., 550 So.2d 1310 (La.App. 1st Cir.1989), writ denied 559 So.2d 121 (La.1990).
We turn next to the issue of whether plaintiffs met their burden of proving each of the requisites for certification of a class. Appellants contend that plaintiffs failed to prove the requirements of impracticability of joinder, adequacy of representation and the common character of the rights sought to be enforced.
*481 The trial court is afforded great discretion in class action certification. Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. Absent manifest error, the decision of the trial court must be affirmed. Ellis v. Georgia-Pacific Corp., supra, 550 So.2d at 1313.

Impracticability of Joinder
Appellants contend that although the proposed class members are numerous, joinder is not impractical, as evidenced by the fact that all suits have been consolidated and are currently being managed efficiently by management committees. This, they argue, patently indicates that joinder is not impractical, and therefore class action is not appropriate.
This identical argument was advanced in Livingston Parish Police Jury v. Acadiana Shipyards, 598 So.2d 1177 (La.App. 1st Cir.), writ denied 605 So.2d 1122 (La.1992), where thirteen separate actions involving 1200 plaintiffs had been joined prior to the motion for class certification. The court in Livingston concluded that although the suits had been joined, proceeding as a mass joinder was impractical, and the class action was the better method by which to proceed.
The class action was devised to solve problems associated with adjudicating lawsuits in cases involving an unwieldy number of parties who should be joined. Livingston, supra, 598 So.2d at 1181. However, whether the class is sufficiently numerous is not dependent upon a specified figure; this determination must be made upon review of the facts of each case.
The proposed class in this case is comprised of both residents and businesses located in Orleans Parish as well as those persons who were physically present in Orleans Parish on September 9, 1987 who sustained damage as a result of the leakage of chemicals from the tank car and the subsequent fire. The class has not yet been geographically limited, and the record in unclear as to the estimated number of persons who are included in this description. The record does indicate that over ten thousand persons and entities filed suit as a result of this accident, and over six thousand proof of claim forms were filed during discovery proceedings.
It is not inconceivable that due to the nature of the chemical leak as well as the expense of litigation and size of the claims, there are additional claimants who have not yet brought action in tort, and therefore cannot be joined in the present suit. Further, due to the large numbers of plaintiffs, there is the possibility that membership of the group may change, causing recurring interruptions of the action. We conclude that the interested parties appear to be so numerous that the courts would be unduly burdened by separate suits or by their joinder, and class action would clearly be more useful and judicially expedient than the other available procedures. Although adjudication of the case by consolidation may under certain circumstances be "possible," we find that under the circumstances presented, the class action is the better method by which to proceed.
Furthermore, La.C.C.P. art. 593.1(B) provides that in the process of class certification, the court may alter, amend or recall its certification and may enlarge, restrict or otherwise redefine the constituency of the class or the issues to be maintained in the class action.

Adequacy of Representation
Appellants contend that the claims of the class representatives do not adequately represent those of the majority of the class.
The claims of the class representatives should be a cross-section of, or typical of, the claims of all class members. Livingston Parish Police Jury v. Acadiana Shipyards, supra, 598 So.2d at 1181.
Depositions submitted to the court at the certification hearing show that the claims of named plaintiffs can be grouped as follows: (1) physical damages; (2) psychological damages; and (3) economic damages. The physical damages are claimed as a result of exposure to the butadiene, *482 which allegedly produced symptoms such as shortness of breath, nausea, dizziness, eye and throat irritation, rashes, and sinus problems. The psychological damages include inconvenience due to the evacuation, mental anguish and suffering, fear, anxiety and emotional disorders. The economic losses claimed are due to peeling house and car paint, cracking, mildew, buckled siding, broken windows, falling tiles, decline in real estate value.
We have thoroughly reviewed the pleadings and depositions and conclude that the claims of the persons specified as class representatives are typical of the majority of the class and represent a cross-section of the types of claims asserted throughout the record. Each of the representative plaintiffs was a resident of or business owner in the area where the train incident occurred, and are similarly situated to the other claimants. We conclude that the trial court had sufficient evidence before it which would support a finding that the class representatives would fairly insure the adequate representation for absent members of the class.

Common Character
Appellants contend that plaintiffs failed to establish the statutory requirement that a common character of rights exists in the instant case.
The most recent enunciation of the common character analysis can be found in McCastle v. Rollins Environmental Services, supra, 456 So.2d 612. Under Louisiana practice there must be a "common character" among the rights of the representatives and the absent members of the class in order to make for a proper class action. La.C.C.P. art. 591(1). Id., at 616.
The phrase "common character" encompasses more than the simple existence of law and fact common to the class. Ellis v. Georgia-Pacific Corp., supra, 550 So.2d at 1315.
The requirement of a "common character" restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bring about other undesirable results. McCastle, 456 So.2d at 616. When a "common character" of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency: and (3) individual fairness. McCastle, 456 So.2d at 616, citing State ex rel Guste v. General Motors Corp., 370 So.2d 477, 488 (La.1978). If the superiority of a class action is disputed, the court must determine whether these goals would be better served by some other procedural device. McCastle, 456 So.2d at 617.

(1) Effectuating Substantive Law

Plaintiffs have asserted causes of action on behalf of a class comprised of residents, property owners and businesses in Orleans Parish for personal injuries and property damage caused by leakage of butadiene from the railroad tank car. The causes of action are based in both negligence and strict liability, as well as in products liability. The legislative policy underlying these causes of action operates to insure that transportation of hazardous chemicals is done so safely and to protect against unreasonable inconvenience or injury to others.
One important aspect of implementing substantive law is to enable plaintiffs to bring actions and courts to enforce policies underlying the law. Without a procedural device such as a class action, many litigants with predominantly small claims would not be able to pursue this type of claim. McCastle, 456 So.2d at 619.
In addition, class action procedures assist courts in judging precisely what outcomes of litigation would best serve the policies underlying the causes of action. Also, the class action protects the rights of absentees who are given representation in the litigative process. McCastle, 456 So.2d at 618.
However, the court must also guard against a distortion in effectuating the substantive law by the exaggerated *483 advancement or deterrent effect or by an unfair result caused by the inappropriate maintenance of a class action. McCastle, 456 So.2d at 618.
In the present case, the record indicates that the majority of the claims filed are for short-term inconvenience, minor temporary illnesses, and relatively minor property damage. The class action would open courts to claims which would not be ordinarily litigated as individual actions. In addition, it is probable that in a class action the court is more likely to see the significance of the individual claims of the residents based on the emission of this chemical and the consequences of imposing liability upon defendants for the results of their useful and important activity. Further, we find no evidence in the record to indicate that the legislative policy will be distorted by unwarranted filing of suits if the class is certified.

(2) Judicial Efficiency

The second inquiry focuses on judicial efficiency. A fundamental objective of the class action device is the achievement of economies of time, effort, and expense. McCastle, 456 So.2d at 619. Appellants contend that individual liability determinations such as causation, credibility and defenses make a class action unmanageable.
In the present case, the single most important issue to be determined is the duty of appellants and their possible liability for this incident. After reviewing the record, we find that the questions of law or fact regarding liability which are common to the members of the class predominate over any questions affecting only individual members.
This suit presents facts similar to those in the McCastle and the Millet cases cited above where an environmental hazard caused alleged injury and inconvenience to nearby residents. In both of those cases, the court held that a common character of rights existed, although there may have been some individual issues to be resolved, and a class action was certified.
Here, there is a common source of liability which can be identified, i.e., the leakage of the butadiene which appellants do not dispute, and there has been no evidence presented of intervening or superceding causes. Although appellants dispute the overall effect of the chemical leak on individual claimants, the issue of appellants' duty predominates over such individual questions. The differences specified by defendants generally concern the proof of damages and whether such damages where caused by the chemical leak. However, individual questions of damages do not preclude a class action when predominant liability issues are common to the class. McCastle, 456 So.2d at 620.
Although appellants cite this Court's decision in Brown v. New Orleans Public Service, Inc., 506 So.2d 621 (La.App. 4th Cir.), writ denied, 508 So.2d 67 (La.1987), we find this case to be distinguishable. In Brown, the Court found evidence that an independent cause, the freezing temperatures which occurred simultaneously with the power outage, may have caused plaintiffs' damages. In the present case, there is no such evidence of any independent or intervening cause other than the leakage of the chemical which makes the litigation inappropriate for class action.
Furthermore, throughout the class action, the court has extensive powers to insure the efficient conduct of the action, and it has the power to revoke, alter or modify the certification order as later developments in the litigation necessitate. La.C.C.P. art. 593.1(C) provides that the court, after certifying a class action, may adopt a management plan which will provide for separate trials for separate issues to be heard before separate juries, as the facts and circumstances necessitate. We hold that the trial court is in the best position to evaluate such circumstances and control the management of this process.

(3) Fairness to the Parties

The final consideration is whether the decision in the class action would be fair to the parties. The court must guard against inconsistent holdings to similarly placed persons without sacrificing overall fairness. McCastle, 456 So.2d at 621.
In reaching this goal, the court must consider the precedential value of a first *484 decision in separately filed actions, the possible injustice of inconsistent results and the size of the absent members' claims. McCastle, 456 So.2d at 621.
In the present case, the record fails to indicate the presence of a multiplicity of other suits by individual plaintiffs. The size of the claims are such that do not warrant individual actions. However, inconsistent decisions would amount to a grave injustice to all the litigants. We conclude that under these circumstances, the class action is the best procedural device to promote fairness.

Conclusion
In conclusion, our review of the record clearly indicates that a class action would be superior to other available methods for effectuating substantive law, judicial efficiency and individual fairness in this case. Further, the parties are so numerous that joinder of the actions is impracticable, and we find the claims of the representatives adequately represent those of the class. We conclude that all the requisites for a class action have been fulfilled, and we find no manifest error in the trial court judgment in certification of a plaintiff class.
For the foregoing reasons, the decision of the trial judge certifying the class is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] Although this judgment is interlocutory in nature, where irreparable injury may result, the judgment is appealable. La.C.C.P. art. 2083; State ex rel Guste v. General Motors Corp., 354 So.2d 770, 773 (La.App. 4th Cir.1978).
[2] LSA-C.C.P. art. 591(1) provides:

A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is: (1) Common to all members of the class.
[3] LSA-C.C.P. art. 592 provides:

One or more members of a class who fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.