710 So.2d 1126 (1998)
Newell H. ANDRY, et al.
v.
MURPHY OIL, U.S.A., INC., Louisiana Power & Light Co., and Ernest Cagle.
Carrie DEFFES, et al.
v.
MURPHY OIL U.S.A., INC.
John POLIZZI, et al.
v.
MURPHY EXPLORATION & PRODUCTION CO. & Murphy Oil U.S.A., Inc.
Anthony S. ANNINO, et al.
v.
MURPHY EXPLORATION & PRODUCTION CO., et al.
INSURANCE COMPANY OF NORTH AMERICA, et al.
v.
LOUISIANA POWER & LIGHT COMPANY and Walworth Company.
Bryan CASSAGNE, et al.
v.
ENTERGY LOUISIANA, INC., et al.
Clebert J. THERIOT, et al.
v.
MURPHY OIL U.S.A., INC.
Toni ALPHONSO, et al.
v.
MURPHY OIL U.S.A., INC. and Reliance National Insurance Company.
Nos. 97-CA-0793 to 97-CA-0800.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1998.
*1128 Kenneth P. Carter, New Orleans and Eugene G. Taggart, Taggart, Morton, Ogden, Staub, Rougelot, Brocato & O'Brien, L.L.C., New Orleans, for Defendant/Appellant Entergy Louisiana, Inc., Etc.
George A. Frilot, III, James F. Shuey, A.J. Krouse, III, Sidney A. Backstrom, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, for Defendant/Appellant Murphy Oil U.S.A., Inc.
Thomas E. Loehn, New Orleans, for Defendant/Appellant The Walworth Co.
Sidney D. Torres, III, Roberta L. Burns, Law Offices of Sidney D. Torres, III, Chalmette and Gerald E. Meunier, Irving J. Warshauer, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans and Gilbert V. Andry, III, Andry & Andry, New Orleans and Joseph M. Bruno, Bruno & Bruno, New Orleans, for Plaintiffs/Appellees.
Before LOBRANO, MURRAY and CIACCIO, JJ.
MURRAY, Judge.
Defendants, Murphy Oil U.S.A., Inc., and Louisiana Power & Light Company[1], appeal a judgment of the trial court denying their exception to the use of class action, and certifying a class for the claims of residents of St. Bernard Parish. We affirm.
At approximately 1:50 a.m. on July 27, 1995, bad weather caused a circuit breaker to trip in an electrical substation owned by Louisiana Power & Light Company, and located in the physical plant of Murphy Oil U.S.A., Inc., in Meraux, Louisiana. LP & L employees were dispatched to close the breaker and to determine why the breaker's automatic closing mechanism did not work. At approximately 8:53 a.m., while they were working on the problem, a short circuit occurred. This caused several units within the plant, including the R.O.S.E. unit, to shut down. When Murphy Oil employees attempted to restart the unit at approximately 9:33 a.m., an explosion and fire erupted.
As a result of the incident, several class action lawsuits and an intervention were filed, all of which were consolidated by the trial court. The named plaintiffs are residents and business owners from the area surrounding the plant. Following discovery directed to the certification issue, a hearing on certification was held on May 29 and 30, 1996. The trial court rendered judgment certifying the class. It defined the class as:
All persons or entities who were present or owned property in the area bounded by Palmisano Boulevard to the west of the Murphy Oil Refinery operated by Murphy Oil, U.S.A., Inc., located in St. Bernard Parish, more particularly in Meraux, Louisiana, the Forty Arpent Canal to the north of the refinery; the Meraux pasture to the east of the refinery; and the Mississippi River to the south of refinery on July 27, 1995, who sustained physical injury, medical expenses, property damage, inconvenience, evacuation expenses, emotional distress, fear, fright, anxiety, economic loss, business loss or expenses, or who are entitled to exemplary damages, as a result of the explosion, fire, or emissions that occurred at Murphy Oil, U.S.A., Inc.'s, Meraux, Louisiana refinery on that date.
Defendants argue that the trial court abused its discretion in certifying a class action because none of the requirements for certifying a class action are present in this case. They alternatively argue that the class definition is overly broad.

DISCUSSION:
A class action is no more than a procedural device; it confers no substantive *1129 rights. The class action is designed to permit the institution and management of litigation involving a right of common character vested in a sufficient number of parties as to render their joinder impracticable in an ordinary proceeding. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion therefrom. La.Code Civ. Proc. art. 597; Williams v. State, 350 So.2d 131, 137-138 (La.1977).
The only issue to be considered by the trial court in ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of a class action the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood that they ultimately will prevail on the merits. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir. 1971).
At the time the class in this case was certified, the basic requirements for a class action were: (1) a class so numerous that joinder is impracticable; (2) the joinder of parties who are members of the class and able to prove adequate representation for absent members; and (3) a "common" character among the rights of the representatives of the class and the absent class members.[2] The party seeking to certify the class bears the burden of proving the required elements. McCastle v. Rollins Environmental Services of La., Inc., 456 So.2d 612, 616 (La.1984). The trial court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at the certification hearing to determine if the elements for certification have been met. Cotton v. Gaylord Container, 96-1958, p. 13 (La.App. 1 Cir.3/27/97), 691 So.2d 760, 768, writs denied, 97-0800 and 0830 (La.4/8/97), 693 So.2d 147.
We now consider whether the trial court properly exercised its discretion in certifying a class in this case.
A. Numerosity
Defendants argue that the number of individual plaintiffs involved in this case does not make joinder impracticable. They contend that the affidavit submitted by counsel for the Andry plaintiffs, which alleges that over 1,400 persons have engaged counsel to assert a claim, is insufficient proof of numerosity because proof of a "definable group of aggrieved persons" is required.
The numerosity element does not depend upon whether or not the plaintiffs can identify all potential class members. It is not essential that every member of a class can be identified prior to certification. In fact, difficulty in identifying the claimants is one of the factors that makes joinder impracticable and a class action appropriate. McCastle, supra.
At least four separate lawsuits seeking to proceed as class actions were filed. In addition, two suits were filed by individual plaintiffs. The court noted that the number of people asserting a claim could increase significantly once notice of the class action was publicized. Murphy Oil distributed two "informational" flyers regarding the incident to the community surrounding the refinery. One flyer was distributed to 10,000 people, and the other was distributed to 15,000 people. Although Murphy contends that the number of flyers distributed is not related to the number of potential plaintiffs, it is quite likely that this publicity alone could produce claims too numerous for the trial court to handle in any manner other than by a class action.
In Gaylord, supra, seventy-eight cases had been filed at the time of the certification hearing; the exact number of claimants was unknown. The court reasoned that due to the large number of potential claimants, *1130 there was the possibility that the membership of the group would constantly change causing recurring interruption of the action. "The interested parties appear to be so numerous that the courts would be unduly burdened by separate suits or by their joinder, and class action would clearly be more useful and judicially expedient than the other available procedures." Id. at p. 14, 691 So.2d at 769.
The trial court's finding that the numerosity requirement was satisfied in the instant case is supported by the record, particularly in light of Murphy's actions in distributing its informational flyers. Although Murphy characterizes this action as a "community-relations effort," it determined that there were at least 10,000 members of the surrounding community who potentially were affected by the incident, at least to the extent that they would be concerned about why it happened, and would want to know what steps were being taken to prevent such incidents in the future.
The trial court explained that the defendants' argument against certifying the class was centered on minimizing the significance of the event and its impact on the community. The court found that this only bolstered the plaintiffs' position that a class action was the ideal procedural vehicle. The court noted that, because of the potentially large number of de minimus claims, a class action would allow access to the courts for claimants who ordinarily might not be able to litigate due to the relative size of their claims when compared with the expense of litigation. We agree that the nature of the incident favors allowing this case to proceed as a class action. As explained by Justice Tate in Williams v. State, when individual claims are small, disallowing a class action poses a serious threat to the loss of individual substantive rights. 350 So.2d 131, 135 (La.1977).
Defendants also complain that the geographical area defined by the court is much broader than that which the evidence supports, arguing that the claims for certain types of damages are without merit. We note at the outset that the trial court described a geographical area that is large enough to encompass all of the claims that had been asserted as of the time of the hearing. In light of the objective of this procedural device, which is the efficient resolution of common issues applicable to a large number of claims, it was reasonable for the court to establish a geographic boundary for the class that was broad enough to encompass all potential class members.[3] If, as Murphy argues, there is no evidence to support some types of claims, the class action will allow these to be disposed of, as a group, very efficiently by other means, such as summary judgment. We, therefore, find no error in the geographical limits imposed on the class by the trial court.

B. Adequacy of Class Representatives
The second requirement for class certification is proof of adequate representation for the absent class members. This requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Gaylord, supra at p. 15, 691 So.2d at 769; Adams v. CSX Railroads, 615 So.2d 476, 481 (La.App. 4 Cir.1993).
Defendants argue that the class representatives appointed by the trial court do not have claims typical of one another, and do not correspond to claims made by other witnesses who testified. We disagree. The petitions filed assert claims for fear, fright, anxiety, property damage, and inconvenience. A thorough review of the record convinces us that the claims of the persons specified as class representatives adequately represent a cross-section of the claims made. Each appointed representative was a resident, business owner, or both, within the geographical area designated by the trial court, and is similarly situated to other claimants. See Adams, supra at 482. The claims asserted by the class representatives include *1131 claims for evacuation, inconvenience, mental anguish and suffering, fear, anxiety, emotional distress, and economic damages for broken windows, removal of soot and debris, medical expenses, and business interruption. Although a claim by a particular class representative with regard to the exact damage claimed may not be typical, the class of damages asserted by each representative is. We, therefore, find nothing in the record to support the defendants' argument that the class representatives will not adequately represent the absent class members.
C. Common Character
In order to satisfy the "common character" requirement, the party seeking to certify the class must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Gaylord, supra at 18, 691 So.2d at 771. Class actions are restricted to cases "in which it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id. at p. 19, 691 So.2d 771; McCastle, supra at 616.
Defendants urge this Court to rely on the recent ruling in Ford v. Murphy Oil U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542, reh'g granted in part, 96-2913 (La.10/10/97), 710 So.2d 235, in which class certification was reversed based in part on the determination that the common character requirement for certification was not met.
The defendants' reliance on Ford is misplaced. The facts of the instant case are decidedly different than those in Ford. Unlike the instant case, Ford involved a class of plaintiffs suing four different and distinct entities claiming that the emissions and pollutants each entity released into the environment over a period of time had a synergistic, damage-causing impact on the community. The Court reasoned that the nature of the claims would require that each class member prove different facts to establish that the defendants' liability, either individually or combined, caused them specific damages on specific dates. The case was further complicated by the "widely divergent types of personal, property and business damages claimed and considering each plaintiffs' unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business." Ford, supra at p. 11, 703 So.2d at 549. The Court found that the facts of Ford strayed "too far from the true class action that the Legislature intended to allow...." Justice Calogero concurred in the result reached in Ford, and emphasized that McCastle, supra, is still good law.
After a thorough review of the record and the trial court's reasons for judgment, we find that a common character of right exists among the claims asserted herein. This case involves one common disaster and the alleged liability of the defendants is derived from the same theories of liability. There are no material variations in the elements of the claims of the various categories of class members. Although there obviously are individual questions of quantum, this does not preclude a class action where, as here, predominant liability issues are common to the class.
Because the record supports the trial court's decision that a class action is the most effective way to efficiently and economically handle these claims, we affirm the judgment certifying and defining the class. All costs of this appeal are to be borne by the defendants.
AFFIRMED.
NOTES
[1] Louisiana Power & Light Company is now known as Entergy Louisiana, Inc.
[2] Articles 591 and 592 were recently extensively revised. La. Acts 1997, No. 839, § 1. However, the revisions apply only to actions filed after the effective date of the amendments, July 1, 1997. La. Acts 1997, No. 839, § 3.
[3] We are mindful that the court may alter, amend or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action at any time prior to a trial on the merits. La.Code Civ. Proc. art. 592 A(3)(c).