811 So.2d 1135 (2002)
Phyllis Kay Roby Doerr, Wife of/and Kenneth John DOERR, Juliette D. Loverde, Donna Jo Topey Loverde Wife of/and Kenneth L. Loverde, Individually and on Behalf of their Minor Child, Kaye Lee Loverde
v.
MOBIL OIL CORPORATION and Chalmette Refining, L.L.C.
No. 2001-CA-0775.
Court of Appeal of Louisiana, Fourth Circuit.
February 27, 2002.
*1138 Sidney D. Torres, III, Roberta L. Burns, Law Offices of Sidney D. Torres, III, Chalmette, LA, Irving J. Warshauer, Gerald E. Meunier, Gainsburgh, Benjamin, David, Meunier & Warshauer, and Gilbert V. Andry, III, Andry & Andry, APLC, New Orleans, LA, for Plaintiffs/Appellees.
Robert B. McNeal, James F. Shuey, Monique Svenson, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Mobile Oil Corporation and Chalmette Refining, L.L.C.
J. Wayne Mumphrey, Wayne B. Mumphrey, Law Offices of J. Wayne Mumphrey, Chalmette, LA, for St. Bernard Parish Government.
Court Composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, and Judge MAX N. TOBIAS, JR.
TOBIAS, Judge.
This class action lawsuit arises out of an alleged discharge of oil and grease and other contaminants from a Mobil Oil Corporation refinery in Chalmette, Louisiana, into the Mississippi River in January 1998. Following the discharge, these contaminants were allegedly drawn into the St. Bernard Parish water system and then distributed to users throughout the parish of St. Bernard. The defendants, St. Bernard Parish Government ("St. Bernard"), Mobil Oil Corporation and Chalmette Refining, L.L.C., (collectively, "Mobil"), have appealed contesting the ruling of the trial court, which granted the plaintiffs' motion for class certification. For the reasons set forth, we affirm the trial court.
Specifically, the plaintiffs contend that from 7 January 1998 to 11 January 1998, approximately 3.4 million gallons of untreated, contaminated waste water and storm water, and 2.1 million gallons of storm water run-off over a period of fourteen hours was discharged by the Mobil Oil Chalmette Refinery into the Mississippi River. The discharged contaminated water contained over 52,000 pounds of oil and grease and other contaminants, which then infiltrated the drinking water system for the parish. Because of this event, it is alleged that over 6,000 individuals present in the parish during the period experienced physical injuries, emotional distress, and economic loss.
A hearing on the issue of class certification lasted for approximately two weeks in March 2000. On 28 April 2000, the trial court rendered judgment certifying the lawsuit as a class action against Mobil and St. Bernard. The class certified is defined as:
All persons and/or entities residing and/or present in St. Bernard Parish, Louisiana, and who or which have sustained damages arising or resulting from the January 7, 1998, discharges of certain hazardous and non-hazardous substances from the facility owned and operated by Mobil Oil Corporation and Chalmette Refining, L.L.C., such class including, specifically, all persons and entities who obtain their water from and/or were exposed to water supplied by the St. Bernard Parish sewerage and water system, which, upon information and belief, was contaminated by chemicals and other contaminants and materials discharged from the facility owned and operated by Mobil Oil Corporation *1139 and Chalmette Refining, L.L.C., located in Chalmette, Louisiana, and, specifically, those who have sustained physical, mental and/or emotional injuries, fright, inconvenience, personal and medical expenses, economic damages, and interruption of or intrusion into their personal and professional lives as a direct consequence of the referenced discharges occurring on the aforementioned date.
The appeals filed by the defendants challenge all aspects of the class certification. Specifically, Mobil has designated six assignments of error:
1. The trial court improperly admitted into evidence and considered unsworn claim forms generated by counsel;
2. It was error to approve class representation upon the showing made;
3. It was error to certify class action claims for physical injuries and personal and medical expenses;
4. It was error to certify class action claims for mental and/or emotional injuries and fright;
5. It was error to certify class action claims for inconvenience and interruption of, or intrusion into, personal and professional lives; and
6. It was error to certify class action claims for economic damages.
St. Bernard has also appealed the class certification and has assigned the following errors for consideration:
1. The trial court erred in failing to dismiss the case for lack of subject matter jurisdiction;
2. The trial court erred in admitting the testimony of two of the plaintiffs' expert witnesses; and
3. The trial court abused its discretion when it certified the class against it.
Before addressing the issue of class certification, we discuss two of St. Bernard's assignments of error. First, St. Bernard alleges that the trial court lacks subject matter jurisdiction over the case because the Clean Water Act, 33 U.S.C. § 1251, and the Safe Drinking Water Amendments to the Clean Water Act, 42 U.S.C. § 300g et seq., preempt all state law claims. A similar argument, however, was rejected by the court in Ford v. Murphy Oil U.S.A., Inc., 750 F.Supp. 766 (E.D.La. 1990). See International Paper Co. v. Ouellette, 479 U.S. 481, 107 S.Ct. 805, 815-16, 93 L.Ed.2d 883 (1987) (Clean Water Act did not preempt common law claims of nuisance asserted by Vermont land owners because state law remedy did not interfere with methods by which federal statute was designed to reach its goal). However, even if these claims are preempted, neither Act contains any special jurisdictional grant like ERISA or the labor statutes, nor provides causes of action or remedies like those sought by the plaintiffs here. Therefore, preemption by these statutes cannot be considered "extraordinary," and would at best be a defense to the state law claims. Aaron v. National Union Fire Ins. Co., 876 F.2d 1157, 1165-66 (5th Cir. 1989).
We find this assignment to be without merit.
St. Bernard's next assignment of error concerns the admissibility of the testimony of plaintiffs' expert witnesses, Dr. Nachman Brautbar and Tracey Zurawel. St. Bernard alleges that the trial court improperly exercised its "gatekeeping role" and allowed their testimony into evidence.
First, we recognize that a class certification hearing is not a trial on the merits. *1140 The only issue to be considered by the trial court in ruling on certification, and by this court on review, is whether the case at bar is one in which the procedural device is appropriate. In general, in determining the propriety of a class action, the court is not per se concerned with whether the plaintiffs have stated a cause of action or concerned with the likelihood that they ultimately will prevail on the merits. See Miller v. Mackey International, Inc., 452 F.2d 424, 427 (5th Cir.1971); Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 3 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129. However, we also acknowledge, as did the trial court, that some connection must exist between the defendants' act and the plaintiffs' injuries. In a case such as this, expert testimony is necessary.
The standard for the admissibility of expert testimony was established by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Daubert test was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993), and applied to La. C.E. art. 702.
Daubert fashioned a standard that requires the trial court to act in a "gatekeeping" function to ensure that all scientific testimony or evidence admitted is not only relevant, but also reliable. State v. Quatrevingt, 93-1644, p. 10 (La.2/28/96), 670 So.2d 197, 204, cert. denied, 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996).
Expert testimony should be admitted whenever the trial court, balancing the probative value against its prejudicial effect, finds that the evidence is reliable and will aid in a decision. Id. The four factors in the Daubert standard are guidelines to be used by the trial court in its determination of reliability of scientific evidence. In order to be admitted, evidence must rise to a threshold of reliability. Id.[1]
In a joint motion in limine, the defendants moved to have the deposed testimony of both of Dr. Brautbar and Ms. Zurawel ruled inadmissible under La. C.E. art. 702 on the basis that their testimony did not meet the standard of admissibility set forth in Daubert.
Dr. Brautbar, who was accepted as an expert in the fields of internal medicine and toxicology, opined, inter alia, that the chemical discharge probably caused the symptoms complained of by the class representatives and claimants.[2] His opinion was based on a qualitative analysis of the facts surrounding the discharge, the known components of the discharge, and *1141 that contaminants in the discharge are known to cause the symptoms found in the plaintiffs. Ms. Zurawel, accepted as an expert in the fields of risk management and toxicology, testified that a commonality of symptoms was experienced by the gross population following its exposure to the contaminated water. Thus, she concluded that the complaints were related to the discharge and consistent with the symptoms one would find after exposure to the contaminants found in the water.
Before receiving the testimony, but after reviewing the defendants' motions and the experts' depositions, the trial court stated that it would afford the testimony the appropriate weight it deserved, after deciding whether the experts accomplished the threshold of admissibility through their expertise and data presented to the court. In the reasons for judgment, the court stated:
Their [plaintiffs'] testimony and evidence is rejected and refuted by defendant's experts and others and the ultimate truth will have to be determined on another day.
Based on a review of the record, we find that the trial court was aware of its role as gatekeeper and that it was able to give the expert testimony appropriate weight and value it accordingly. St. Bernard has not proven that the trial court abused its vast discretion in admitting the testimony into evidence or that the trial court afforded it undue weight. A class certification hearing does not determine liability, but rather whether the plaintiffs have proven the elements necessary to proceed as a class action. Absent demonstration of a manifest abuse of discretion, we do not find that the trial court erred.
We also note that the trial court stated that it relied heavily on the testimony of Jacob Groby, III, in making its decision to certify the class. Mr. Groby, a technical superintendent at the water treatment plant, testified that the plant was shut down at about 10:00 a.m. on 7 January 1998 because of an objectionable taste and odor in the water samples. Mr. Groby also testified to the presence of benzene in one sample taken at double the maximum contaminant level for safe drinking water. Further, Mr. Groby stated that he did not drink the water in his own home for about twenty-four hours because he did not know what was in it.[3] Finally, Mr. Groby testified that the water board began receiving consumer complaints about the water later on 7 January 1998.
Considering all the evidence before it, we cannot say that the trial court erred in finding a connexity between the discharge and the plaintiffs' complaints. Such a finding was well within the vast discretion of the trial court.
We now turn to the crux of this case, the class certification order of the trial court.
A class action is nothing more than a procedural device. It confers no substantive rights. The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the class representatives who bring the action, but to all others who are similarly situated, provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion therefrom. La. C.C.P. art. 597; Williams v. State, 350 So.2d 131, 137-38 (La.1977); Andry, 97-0793 at pp. 2-3, 710 So.2d at 1128-29.
*1142 Louisiana courts have vast discretion to determine whether to certify a class. See Billieson v. City of New Orleans, 98-1232, p. 8 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152-53, writ denied, 99-0946 (La.10/29/99), 749 So.2d 644. A trial court must be afforded wide latitude when making factual and policy determinations as to the appropriateness of a class. See Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4 Cir.1993). The decision of the trial court, therefore, should not be reversed absent manifest error. Id.
Mobil contends that the case before us is one of first impression because it was filed after July 1, 1997, and is, therefore, subject to the amendments to the Louisiana Class Action Statute enacted by Acts 839 of 1997, particularly La. C.C.P. art. 591(B)(3) and (C).[4]
Although the 1997 legislation completely rewrote the class action provisions, the expanded provisions, according to the editor's notes following Article 591, "appear to incorporate much of the jurisprudence, as set forth in McCastle v. Rollins [Environmental Services of Louisiana], supra [456 So.2d 612 (La.1984)]." Thus, we find that the trial court's citation to McCastle in its reasons for judgment was not a reference to outdated law. Moreover, Chief Justice Calogero, in Ford v. Murphy Oil U.S.A., Inc., 96-2913, 96-2917, 96-2929 (La.9/9/97), 703 So.2d 542, 551, which was decided after the 1997 amendments (but applied the prior law), concurred "to emphasize that this Court's decision in McCastle v. Rollins Environmental Services of Louisiana, 456 So.2d 612 (La. 1984), is still good law." Therefore, while this opinion applies the amended changes to La. C.C.P. art. 591, we do not find a substantive change has been made to the law.
Mobil, however, insists that La. C.C.P. 591(C) requires a reversal of the certification of the class. Subsection C states:
Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
We interpret this paragraph as prohibiting certification when liability claims or defenses are present that are dependent on proof individual to members of the class. However, after certification, *1143 the trial court can determine damage claims and defenses dependent on proof individual to members of the class. To read subsection C as Mobil urges would eradicate the class action. Although the Legislature may have intended to change the law, we do not find that to have occurred by the addition of this paragraph.
In the case at bar, no one disputes that there was a discharge. Also little dispute exists that the water tasted and smelled offensive to the plaintiffs. Finally, testimony in the record demonstrates that certain of the contaminants in the water could have caused many of the physical complaints. Therefore, the issue of liability is common to all of the claimants. We do not find that subsection C precludes a class action here.[5]
Mobil's first assignment of error involves numerosity and the plaintiffs' use of "claim forms." The plaintiffs refer to these documents as "interview forms," which they contend were primarily used to prove the numerosity requirement of class certification.
Generally, a class action is appropriate whenever the interested parties appear to be so numerous that separate suits would unduly burden the courts, and a class action would "clearly be more useful and judicially expedient than the other available procedures." Cotton v. Gaylord Container, 96-1958, p. 14 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 769. Determination of whether this requirement has been fulfilled depends on the facts and circumstances of each individual case. Id.
No set number of plaintiffs is required in order to fulfill this requirement. Id. In fact, difficulty in identifying the claimants is one of the factors that makes joinder impracticable and a class action appropriate. Id. The class, however, must be definable. Id.; See also Andry, 97-0793 at p. 4, 710 So.2d at 1129.
The evidence contained in the record shows that the numerosity element has been satisfied. The plaintiffs presented the testimony and affidavit of Daniel Clavier, C.P.A., a computer database expert, who examined over 6,000 interview forms completed by parish residents. These claimants represent a definable group (persons present in St. Bernard Parish on 7 January 1998), their complaints are discharge waste-related, and they are not so numerous that it makes identification and notice impracticable. Accordingly, we find that the elements of numerosity, as well as definability, have been satisfied.
We appreciate the defendants' concerns about the "interview forms." The plaintiffs claim that these forms "were created by plaintiffs' counsel as a tool to develop what complaints the thousands of persons who had retained them were making as a result of the incident at issue." As we understand this explanation, the interview forms were only used to establish numerosity and commonality for the class certification proceeding. The plaintiffs will be required to submit appropriate proofs of claim to establish damages, if that issue is ultimately reached.
The next assignment of error concerns typicality and the adequacy of *1144 representation for the absent class members. This element requires that the claims of the class representatives be a cross-section of, or typical of, the claims of all class members. Andry, 97-0793 at p. 6, 710 So.2d at 1130; Adams, 615 So.2d at 481.
Louisiana jurisprudence does not require a "Noah-like" tabulation of class representatives and claims. Johnson v. Orleans Parish School Board, XXXX-XXXX, p. 10 (La.App. 4 Cir. 6/27/01), 790 So.2d 734, 742. The plaintiffs are not required to produce two, or even one, of every kind of claim or of every person included in the class. The law only requires that the plaintiffs "typically" and "adequately" demonstrate that they represent a cross-section of the claims asserted on behalf of the class. Id.; Andry, 97-0793 at p. 6, 710 So.2d at 1131.
The defendants argue that the class representatives do not have claims typical of one another and only demonstrate that their claims were "peculiar." We disagree. The interview forms introduced into evidence identify alleged symptomology, i.e., damages for fear, emotional distress, various physical ailments, economic loss, and inconvenience. A thorough review of the record on appeal convinces us that the claims of the persons specified as class representatives adequately represent a cross-section of the claims made. Each representative who testified was a resident within the geographical area designated by the trial court, and is similarly situated to other claimants. We therefore find nothing in the record to support the defendants' argument that the class representatives will not adequately represent the absent class members.
The third requirement for certification of a class action is that there be questions of law and fact common to the class. Billieson, 98-1232 at p. 19, 729 So.2d at 157. Generally, the jurisprudence requires that the common questions predominate over the individual issues because "[c]lass actions are limited to cases in which it would achieve economics of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Scott v. American Tobacco Co., 98-0452, p. 8 (La.App. 4 Cir. 11/4/98), 725 So.2d 10, 14.
Thus, the "common character" requirement involves a two-step inquiry: (1) a determination that common issues predominate over questions affecting only individual members, and (2) a determination that the class action procedure is superior to other procedural mechanisms. Kent A. Lambert, Certification of Class Actions in Louisiana, 58 La. L.Rev. 1085, 1119 (1998). The second inquiry is necessary only where, as here, the superiority of the class action procedure is disputed. McCastle, 456 So.2d at 617; Lailhengue v. Mobil Oil Co., 94-2114, p. 8 (La.App. 4 Cir. 6/7/95), 657 So.2d 542, 547.
We first find that a "common character" of rights exists in this case. Each member of the class alleges that the defendants are liable for any and all damages incurred from the release of contaminated wastewater into the Mississippi River that wound up in the St. Bernard Parish water system. While individual damages may vary, the "common character" of rights exists that justifies a class action lawsuit.
This finding is supported by recent jurisprudence. For example, in Mayho v. Amoco Pipeline Co., 99-620 (La.App. 5 *1145 Cir. 12/15/99), 750 So.2d 278, a class action was filed after a release of hydrogen sulfide and benzene into the air because of an oil spill. The court found that the plaintiffs had proved commonality because all damages were incurred from the same single event. In Dumas v. Angus Chemical Co., 25,632 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, an explosion at a nitroparaffins plant resulted in the filing of a class action by local residents. Again, the court found commonality, although it recognized that individual questions of quantum existed.
The defendants contend that the recent Supreme Court decision of Ford v. Murphy Oil, U.S.A., Inc., 96-2913 (La.9/9/97), 703 So.2d 542, requires a different result. Ford involved a class of plaintiffs, suing four different and distinct entities, claiming that the emissions and pollutants each entity released into the environment over a period of time had a synergistic, damage-causing impact on the community. The Court concluded that the nature of the claims would require that each class member proves different facts to establish that the defendants' liability, either individually or combined, caused a plaintiff specific damages on specific dates. Id. at p. 11, 703 So.2d at 549. In contrast to Ford, in the case at bar only one source of the contaminated wastewater is asserted and the discharge occurred during one narrow time period. In many ways, the matter before us is similar to the Supreme Court's opinion in McCastle, which remains good law even after the 1997 revisions to the class action statutes. Id. at 1, 703 So.2d at 551 (Calogero, C.J., concurring). In addition, the Court recently cautioned:
As we have made clear before and reiterate today, the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification. See McCastle v. Rollins Envir. Servs. of La., Inc., 456 So.2d 612, 620 (La.1984); State ex rel. Guste v. G.M. Corp., 370 So.2d 477, 489 (La.1978).
Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 99-0494, p. 3 (La.11/12/99), 759 So.2d 755, 756. The difficulties, which may be encountered in handling this class action, do not out-weigh the economies to be derived from unitary adjudication of, at the very least, liability for the incident and determination as to whether damages could have resulted. McCastle, 456 So.2d at 620.
In this case, we find that a class action achieves economy of time, effort, and expense. As noted, more than 6,000 possible claimants fit within the proposed class. The trial court would be greatly burdened by separate suits or by the joinder or intervention of interested parties in separately brought actions. Class action was designed to handle this type of litigation, while still preserving the integrity of the proceedings for all parties involved. By certifying this case as a class action, the trial court may employ the provisions of La. C.C.P. art. 592, which give the trial court discretion to amend or recall certification, and enlarge, restrict, or redefine the constituency of the class or issues to be maintained in the action.
Finally, class actions may further substantive law by: (1) opening courts to claims not ordinarily litigated, thus enabling courts to enforce legislative policies underlying those causes of action; and (2) enabling courts to recognize the full implications of recognizing rights or remedies by allowing them to determine what outcome *1146 in litigation would best serve the policies underlying the causes of action. McCastle, 456 So.2d at 618.
Our review of the record indicates that some of the plaintiffs claim to have sustained moderately severe damages because of the discharge. However, many other plaintiffs are apparently alleging claims that are relatively minor. Due to the "smallness" of the recovery allowable to these plaintiffs, a class action is the appropriate procedural vehicle to process this dispute fairly and efficiently. See Stevens v. Board of Trustees, 309 So.2d 144, 151 (La.1975); Williams v. State, 350 So.2d 131, 135 (La.1977).
Finally, we decline at this time to address Mobil's argument that certain damages alleged to have been sustained by the plaintiffs are not recoverable. These are matters better addressed if liability is ultimately determined. As we have cautioned before, in reviewing a class certification order, the court is not generally concerned with whether the plaintiffs have stated a cause of action or the likelihood that the plaintiffs ultimately will prevail on the merits. Andry, 97-0793 at p. 3, 710 So.2d at 1129.
Based on the foregoing, we find that plaintiffs have fulfilled both the statutory and jurisprudential requirements for a class action. If an error is to be made, it should be in favor of, and not against the maintenance of, the class action because the class is always subject to modification should later developments during the course of the trial so require. McCastle, 456 So.2d at 620. Accordingly, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] The considerations, which bear on the preliminary assessment of validity of the evidence and its applicability, are:

1. The "testability" of the expert's theory or technique;
2. Whether the theory or technique has been subjected to peer review and publication;
3. The known or potential rate of error; and
4. Whether the methodology is generally accepted in the scientific community.
Daubert, 113 S.Ct. at 2796-97.
[2] As pointed out by St. Bernard, Dr. Brautbar's expert testimony has been rejected by at least two other courts. See Sanderson v. International Flavors and Fragrances, Inc., 950 F.Supp. 981 (C.D.Cal.1996), and Cabrera v. Cordis Corp., 945 F.Supp. 209 (D.Nev.1996), aff'd, 134 F.3d 1418 (9th Cir.1998). However, Dr. Brautbar has been recognized as an expert in toxicology, see Triche v. Overnite Transp. Co., 1996 WL 276353 (E.D.La.1996), and permitted to testify as to symptoms associated with benzene exposure, see In re Ingram Barge Co., 187 F.R.D. 262 (M.D.La. 1999).
[3] Mr. Groby testified that the tap water in his home had the same odor as that found at the plant.
[4] La. C.C.P. art. 591(B)(3) provides:

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation ...
[5] We note that a mass tort such as the one presented here is typically not a "true" class action. See Ford v. Murphy Oil U.S.A., Inc., 96-2913, pp. 5-6 (La.9/9/97), 703 So.2d 542, 545. However, "`mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement.'" Id. at p. 13, 703 So.2d at 549, quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).