935 So.2d 231 (2006)
Phyllis Kay Roby Doerr, Wife of/and Kenneth John DOERR, Juliette D. Loverde, Donna Jo Topey Loverde, Wife of/and Kenneth L. Loverde, Individually and on Behalf of their Minor Child, Kaye Lee Loverde
v.
MOBIL OIL CORPORATION and Chalmette Refining, L.L.C.
No. 2004-CA-1789.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 2006.
*232 Sidney D. Torres, III, Roberta L. Burns, Law Offices of Sidney D. Torres, *233 III, APLC, Slidell, LA, Irving J. Warshauer, Gerald E. Meunier, Gainsburgh, Benjamin, David, Meunier & Warshauer, Gilbert V. Andry, III, Jerald N. Andry, Jr., Andry & Andry, L.L.C., New Orleans, LA, for Plaintiffs/Appellants.
Robert B. McNeal, Mark L. McNamara, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, Alvin J. Bordelon, Jr., Metairie, LA, for Defendants/Appellees.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge ROLAND L. BELSOME).
PATRICIA RIVET MURRAY, Judge.
This is a class action lawsuit arising out of a discharge of oil, grease, and other contaminants from a Mobil Oil refinery in Chalmette, Louisiana into the Mississippi River. Following the discharge, the contaminants were drawn into the St. Bernard Parish water system and then distributed to users throughout the parish. Pursuant to a joint trial plan, a bench trial was held in this matter at which the claims of thirteen named plaintiffs were tried.[1] The only defendants at trial were Mobil Oil Corporation and Chalmette Refining, L.L.C. (collectively "Mobil"). The trial court rendered judgment in favor of the thirteen plaintiffs. From that judgment, the plaintiffs appeal, and Mobil answers the appeal. For the reasons that follow, we affirm in part and reverse in part.

I.
On January 7, 1998, Mobil discharged approximately 3.4 million gallons of untreated, contaminated waste water and storm water, and 2.1 million gallons of storm water run-off over a period of fourteen hours into the Mississippi River. The discharged water contained over 52,000 pounds of oil and grease and other contaminants, which then infiltrated the Parish's drinking water system. Residents immediately voiced complaints about the odor and taste of the water. The Parish Water Board documented that it received over 160 calls. The callers described the parish water as appearing "cloudy" and "greasy" and smelling like "gasoline," "kerosene," and "petroleum."
On January 14, 1998, this class action was filed against Mobil. It is alleged that over 6,000 persons who were present in the parish at the time Mobil's discharge contaminated the Parish's water supply experienced physical injuries, emotional distress, and economic loss. On November 5, 1998, a supplemental and amended petition was filed to add as a defendant St. Bernard Parish, through the Department of Public Works, Water Division (the "Parish"), on the basis of its distribution of the contaminated water throughout the parish. Following a hearing, the trial court on April 28, 2000, certified the lawsuit as a class action against Mobil and the Parish. The trial court defined the class as follows:
All persons and/or entities residing and/or present in St. Bernard Parish, Louisiana, and who or which have sustained damages arising or resulting from the January 7, 1998, discharges of certain hazardous and non-hazardous substances *234 from the facility owned and operated by Mobil Oil Corporation and Chalmette Refining, L.L.C., such class including, specifically, all persons and entities who obtain their water from and/or were exposed to water supplied by the St. Bernard Parish sewerage and water system, which, upon information and belief, was contaminated by chemicals and other contaminants and materials discharged from the facility owned and operated by Mobil Oil Corporation and Chalmette Refining, L.L.C., located in Chalmette, Louisiana, and, specifically, those who have sustained physical, mental and/or emotional injuries, fright, inconvenience, personal and medical expenses, economic damages, and interruption of or intrusion into their personal and professional lives as a direct consequence of the referenced discharges occurring on the aforementioned date.
On the defendants' appeal, this court affirmed the trial court's judgment certifying the class, and the Louisiana Supreme Court denied the defendants' application for writ of certiorari. Doerr v. Mobil Oil Corp., XXXX-XXXX (La.App. 4 Cir. 2/27/02), 811 So.2d 1135, writ denied, XXXX-XXXX (La.5/31/02), 817 So.2d 106. On May 14, 2004, the trial court denied Mobil's "Motion for Decertification of Class and Dismissal of Purported Class Members."
From January 20, 2004 through February 12, 2004, a bench trial was held in this matter at which the claims of thirteen plaintiffs against Mobil were tried.[2] At trial, six experts and twenty-two fact witnesses (including the thirteen plaintiffs) testified, and more than three hundred exhibits were introduced. On June 4, 2004, the trial court rendered judgment in favor of the thirteen plaintiffs. The trial court found both Mobil and the Parish were at fault and allocated fault 90% to Mobil and 10% to the Parish. The trial court awarded damages to all but two of the thirteen plaintiffs. The trial court awarded $2,000 to six plaintiffs, $1,000 to two plaintiffs, $500 to three plaintiffs, and no damages to two plaintiffs. From that judgment, Plaintiffs appeal, and Mobil answered the appeal.[3]

II.
For clarity sake, we first address the procedural and substantive arguments Mobil raises on its cross appeal. Procedurally, Mobil contends that the trial court erred in denying its motion to decertify the class. Mobil argues the motion should have been granted because each class member's claim will require an individualized adjudication of causation and damages. Plaintiffs counter that Mobil is re-raising the same arguments this court rejected in affirming the trial court's certification decision.
A trial court's decision denying a motion to decertify a class is reviewed on appeal for an abuse of discretion. See Richardson v. American Cyanamid Co., 99-675 (La.App. 5 Cir. 2/29/00), 757 So.2d 135 (finding no abuse of discretion in trial court's decertification of class). "In the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of class, in the guise of motions to reconsider the class ruling." 3 Alba *235 Conte and Herbert Newberg, Newberg on Class Actions, § 7:47 (4th ed.2002).
Mobil's arguments for decertification, as Plaintiffs contend, are very similar to those we rejected in our earlier decision affirming the trial court's certification decision. In this case, there has not been a material change in circumstances since the initial class ruling. This case is procedurally distinguishable from the two cases Mobil relies upon, Richardson, supra, and Spitzfaden v. Dow Corning Corp., 98-1612 (La.App. 4 Cir. 12/4/02), 833 So.2d 512. In those two cases, the trial courts decertified the class; in this case, the trial court refused to decertify the class. We find that the trial court did not abuse its discretion in refusing to decertify the class.
Substantively, Mobil argues that the trial court erred in its allocation of fault. Mobil argues that because the Parish's water plant systematically ignored its operating procedures and breached its statutory duty to make clean water, the Parish was either the sole or the major cause of the off-taste water. Mobil characterizes the Parish's fault as an "independent or intervening" cause for which it is not responsible. Plaintiffs counter that the record supports the trial court's allocation of fault. We agree.
In allocating fault, the trial court in its judgment stated:
The Court is convinced from the totality of the evidence that the defendants, Mobil Oil Corporation and Chalmette Refining, L.L.C., were negligent in allowing and causing harmful toxins to enter the Mississippi River and ultimately the homes of the plaintiffs. The defendants had the expertise and ability to prevent this situation and not rely on the defense of "Act of God" or "The Perfect Storm." The Court assesses the fault of these defendants at 90%.
The Parish of St. Bernard must share a portion of the total blame because of its failure to act timely and responsibly in preventing the home intrusion of contaminated water. This fault is assessed at 10%. The Court finds no fault on the part of plaintiffs.
The trial court's allocation of fault is a question of fact, which is reviewed on appeal under the manifest error standard. Petre v. State, Dep't of Trans. and Dev., XXXX-XXXX, p. 13 (La.4/3/02), 817 So.2d 1107, 1114. In allocating fault, the Watson factors apply, to-wit: 1) whether the conduct results from inadvertence or involved an awareness of the danger; 2) how great a risk was created by the conduct; 3) the significance of what was sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. Petre, XXXX-XXXX at p. 13, 817 So.2d at 1114-15.
The record reflects that Mobil was under a state-issued compliance order to physically separate the Parish's water intake "from all possible contamination by discharge from the Refinery." In August 1987, the Louisiana Department of Environmental Quality ("DEQ") issued this order to Mobil's predecessor, Tenneco Oil Company ("Tenneco"), after a xylene leak from the refinery contaminated the Parish's water supply. This order mandated that the owner of the refinery take action to physically separate the Parish's water intake from all possible contamination by discharges from the refinery. The order suggested this could be accomplished in one of three ways; to-wit: (i) relocating all refinery discharges to a point downstream of the Parish water intake, (ii) relocating the intake to a point upstream of all refinery discharges, or (iii) any other means approved by the DEQ.
*236 In December 1987, the refinery employed Wink Engineering to conduct a dye study for the purpose of evaluating the potential impact of a discharge from the refinery on downstream domestic water treatment facilities. The study traced the path of a green dye discharged from the refinery down river directly to the Parish's water intake. The dye study confirmed that a contaminated discharge from the refinery would impact the Parish's water intake. Another significant finding of the study was that "[l]ocal currents near the St. Bernard intake structure restricts the downstream flow of river water at low river flow rates. This would result in an increased duration of the impact of a Tenneco [Refinery] spill at the water works during low river flow conditions."
In an attempt to comply with the DEQ's order, Mobil constructed a hydraulic separation, which required moving the Parish water intake further out and deeper into the river. Mobil selected this option, as opposed to relocating either the Parish's intake or the refinery's outfalls, despite the following factors: (i) the dye study showed that "relocation of the St. Bernard intake structure further out into the river to a depth of 40 feet would minimize, but not eliminate, the impact of a refinery spill at the water works during low river conditions;" and (ii) Bruce Hillman, Mobil's project engineer on the intake extension project, warned that the project was deficient because of the potential for silting coupled with the lack of a plan for the refinery to continue to maintain the project. Mr. Hillman further warned that if the project failed, the Parish would be forced to revert to using the old intake.
In 1989, the construction of the intake extension was completed. However, in February 1991, the Parish notified Mobil that the intake extension had failed due to silting. As a result of that failure, the Parish reverted to using the old intake. Although Mobil made some efforts to develop a plan to repair the hydraulic system, it abandoned those efforts in 1993. Mobil does not dispute that it made no further efforts at complying with the order requiring it to separate its discharge from the Parish's water intake.
The evidence at trial reflected that the January 7, 1998, contaminated discharge at issue in this case was not an isolated occurrence; rather, as Mobil acknowledges, such discharges occurred "every now and then," such as when a "hellacious rainstorm occurred." Indeed, as Plaintiffs point out, the record reflects that there were six other documented cases of the Chalmette Refinery's discharging contaminated water into the Mississippi River allegedly due to rainfall as reported to DEQ.[4]
Given Mobil's awareness that contaminated discharges from its refinery would affect the Parish's water supply coupled with Mobil's failure to take any further efforts to comply with the DEQ's order after the hydraulic system failed, we cannot say that the trial court was manifestly erroneous in finding Mobil at fault. Stated otherwise, we find the record supports the trial court's factual finding that Mobil "had the expertise and ability to prevent this situation."
Although we might have allocated fault differently, we cannot say that the trial court's allocation was manifestly erroneous.

III.
Plaintiffs' first contention is that the trial court erred in applying an incorrect *237 legal standard to deny recovery of emotional distress damages to two of the plaintiffs based solely on their lack of physical injury. We find the trial court legally erred by imposing such a requirement.
The correct standard for the recovery of negligent infliction of emotional distress absent physical injury is that the plaintiff must show an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi v. State Through Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990); Bonnette v. Conoco, Inc., 2001-2767 (La.1/28/03), 837 So.2d 1219. Louisiana courts have also recognized that plaintiffs, without regard to physical injury, may recover for emotional distress and inconvenience resulting from damage to their property, but only in the following four categories of cases: (1) when the property was damaged by an intentional or illegal act; (2) when the property was damaged by acts giving rise to strict or absolute liability;[5] (3) when the property was damaged by activities amounting to a continuous nuisance; and (4) under circumstances where the owner was present or nearby at the time the damage occurred and suffered psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself. Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 7.02[6] (2nd ed.2004). The jurisprudence, however, has limited such recovery by requiring that the emotional distress be severe and not merely the result of the usual worry or anxiety attendant to property damage. See Farr v. Johnson, 308 So.2d 884 (La.App. 2d Cir.1975).
The trial court acknowledged that all the plaintiffs suffered some level of inconvenience, but that none of them suffered any serious injury. The court refused to award any damages to the two plaintiffs who suffered inconvenience and distress, but no physical injury. We find this to be an abuse of the trial court's discretion.
In reaching this conclusion, several factors have been considered.
First, in Bonnette, the court was concerned with the speculative nature of the claims therein, the potential for spurious claims, and the difficulty in distinguishing valid from spurious claims. Hence, the Court imposed the additional burden on the plaintiff to establish factor(s) which would support a finding that his claim was valid. The existence of physical injury is one such factor, but others may also exist. Proximity to the event, witnessing injury to others, and contemporaneous reports from reliable sources that the danger is real are also indicia of the reliability of claims of emotional distress.
Here, the record established that these two plaintiffs, David Peterson and Raymond Garafolo, were exposed to contamination of the potable water supply through the fault of the defendants. While this particular discharge and the attendant distress and inconvenience were of relatively short duration, it was established that the contaminated discharge in this case was not an isolated event. The repetition of such events would add to the distress of these plaintiffs, all of whom *238 experienced the legitimate concern that the safety of their water supply had been compromised.
Second, it is a troubling proposition that a tortfeasor can be relieved of responsibility if its conduct produces minimal harm, albeit to many people. Surely a wrong that causes a hundred dollars of harm to ten thousand people is of no less concern than a wrong that causes a million dollars of harm to an individual. To declare the former harm de minimus, and not worthy of redress is to undermine the dual concerns of tort law: accountability for the wrongdoer and compensation for the victim.
Third, it is a legitimate concern that the courts not be bogged down by claims that are minimal. It makes little economic sense to have parties engage in litigation over sums greatly outweighed by the expense of the legal process. However, where, as here, the claims of a large population can be processed efficiently by virtue of class certification, there can be no valid reason not to hold a corporate wrongdoer accountable and to afford appropriate relief to the individual members of the class.
The trial court found that all plaintiffs had suffered some inconvenience. The record establishes that the emotional distress suffered by these plaintiffs was not the usual worry or anxiety associated with property damage, but legitimate concern about health effects. Because of their legitimate concern, both Mr. Garafolo and Mr. Peterson testified that they now use only bottled water. Mr. Garafolo further testified that he purchased a filtered refrigerator that filters water for ice cubes and drinking. According to Mr. Garafolo, this incident brought back memories of boiling water after Hurricane Betsy flooded his Arabi home. Mr. Garafolo also testified that every morning he smells the water before he uses it to brush his teeth or bathe. Similarly, Mr. Peterson testified that he no longer drinks tap water because he fears and distrusts the water supply.
For these reasons, we find the trial court abused its discretion in refusing to award any damages to the two plaintiffs who had no physical injuries. We find an appropriate award to each of these two plaintiffs to be $250.
As to the other eleven plaintiffs, the trial court awarded lump sum damage awards ranging from $500 to $2,000. Plaintiffs contend these awards do not include any amount for emotional distress. Although it is unknown whether the trial court's lump sum awards to these plaintiffs included any amount for "parasitic"[6] emotional distress damages, "[i]t is well settled that a lump sum judgment is presumed to award all items of damages claimed." Bryan v. City of New Orleans, 98-1263, pp. 2-3 (La.1/20/99), 737 So.2d 696, 697 (citing Reichert v. Bertucci, 96-1213 (La. App. 4 Cir. 12/4/96), 684 So.2d 1041). In this case, the certified class is defined as "those who have sustained physical, mental and/or emotional injuries, fright, inconvenience, personal and medical expenses, economic damages, and interruption of or intrusion into their personal and professional lives as a direct consequence of the referenced discharges occurring on the aforementioned date." Doerr, XXXX-XXXX at p. *239 2, 811 So.2d at 1139. It is thus presumed that the lump sum awards to the eleven plaintiffs include damages for not only personal injuries, but also emotional distress and inconvenience. The application of this presumption in this case is supported by the trial court's express reference in its judgment to the plaintiffs' inconvenience and lack of serious injuries. We find the trial court's lump sum awards are not an abuse of discretion.

DECREE
For the forgoing reasons, the judgment of the trial court is affirmed in part and reversed in part.
AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART.
JONES, J., Concurs In Part and Dissents In Part.
JONES, J., concurring in part and dissenting in part.
I respectfully dissent because the majority fails to adjust the damage awards rendered by the district court. Thus, considering that the district court allocated fault between both Mobil and St. Bernard Parish, the damage awards to the Appellants should have been reduced on the basis of comparative fault.
In all other respects, I concur with the majority.
NOTES
[1] The thirteen plaintiffs are as follows: Phyllis Kay Roby Doerr, Kenneth John Doerr, Kenneth L. Loverde, Donna Loverde, Juliette Loverde, Lisa DeRose May, Lorraine Guillory, Joseph Roberts, Charles Rohr, Myrna Hinyub, John Swider, David Peterson, and Raymond Garofalo. This court granted a motion to substitute as a party plaintiff the heirs of Kenneth L. Loverde, who died in May 2004 from causes unrelated to the injuries claimed in this case.
[2] The Parish was not a party-defendant at trial because on May 9, 2000, the trial court approved a preliminary settlement agreement between the Parish and the plaintiffs.
[3] This court denied a motion to dismiss this appeal due to lack of certification as a final judgment.
[4] The reported discharges occurred on April 2, 1998; November 7, 1989; November 8, 1989; May 13, 1990; April 19, 1991; and May 9, 1995.
[5] Before the 1996 amendment to the vicinage articles (which provided generally for a negligence standard), La.C.C. art. 667 was construed to provide for absolute (or strict) liability and thus fall under the second category. Louisiana Tort Law, § 16.01. The jurisprudence thus recognized that "[a] person suffering mental distress from a neighbor's violation of the Civil Code articles on vicinage may recover for such distress." Louisiana Tort Law, § 5.08.
[6] It is well-settled that "[m]ental distress that accompanies prior or contemporaneous physical injury is compensable; it is sometimes is called `parasitic,' and as such is an element of damages caused by the physical injury." Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 5.08 (2nd ed.2004).