*798
 
 EDWIN A. LOMBARD, Judge.
 

 |,In this class-action suit, Defendants, the Housing Authority of New Orleans (“HANO”) and C.J. Brown/Ventana, appeal the district court’s judgment denying them motions to decertify the class. Finding that the district court did not abuse its discretion in denying Defendants’ motion to decertify, we affirm the judgment and remand the case for further proceedings.
 

 Relevant Facts and Procedural History
 

 This suit was originally filed over fourteen years ago on behalf of children alleged to have been poisoned by lead in New Orleans public housing developments owned by HANO and managed by C.J. Brown/Ventana. In January 1995, Plaintiffs moved to certify the case as a class action, but following a hearing in December 1997, the district court denied Plaintiffs’ motion to certify the class. After a subsequent motion for new trial was also denied, Plaintiffs appealed to the Louisiana Fourth Circuit Court of Appeal. This Court reversed the district court’s ruling on March 3, 1999, finding that the trial court abused its discretion by |2denying the motion for class certification “because the plaintiffs presented sufficient record evidence to fulfill the statutory and jurisprudential requirements.”
 
 [1]
 

 Eight and a half years later, On October 22, 2007, HANO filed the instant motion to decertify the class action. C.J. Brown/Ventana subsequently filed its own motion to decertify, adopting HANO’s arguments by reference. The parties argued the merits of the motions before the trial court on January 14, 2009.
 

 In their motions to decertify the class, Defendants argued that the class should be decertified because legal, factual, and procedural developments since the initial class certification demonstrate that class adjudication will not adequately resolve Plaintiffs’ claims, and because individual factual and legal issues will predominate over common issues. In response, Plaintiffs argued that Defendants have made, and lost, the same argument before, that Defendants’ arguments are really directed towards the trial plan and not towards class certification and that nothing has changed since the initial class certification to justify a decertification.
 

 The trial court denied the motions from the bench and, later issued extensive reasons for judgment substantiating its refusal to decertify the class. After recounting the pertinent facts and procedural history, the trial court thoroughly analyzed this Court’s ruling that originally ordered certification of the present class. The trial court observed that many of the arguments made in the present motion have been urged and reurged in the decade the case has been certified and that the arguments have been rejected repeatedly by the District Court, the Fourth ^Circuit, and the Supreme Court. The court acknowledged the numerous appellate decisions in the past ten years concerning class certification, but opined that the applicable law has not changed in any way that would warrant decertification of this case. The court also noted that there have been no factual changes in this case that would justify decertification. The court discussed the impracticality of decertifying the class, noting, “from a practical standpoint, it is clear to this court that decerti-fying this class after fourteen years of litigation and ten years of certification would be most inappropriate for multiple reasons” including “the potential of flooding the docket of the Civil District Court with hundreds, perhaps thousands, of additional lead poisoning suits,” which would
 
 *799
 
 “do nothing to serve litigant or judicial economy.” Finally, the court noted that the trial, which is set to begin on March 1, 2010 would resolve all common issues, including those involving insurance coverage, and that to disrupt the forward progress of this case at this point in time by decertify-ing it would be inappropriate. In conclusion, the district court, ruled that, “pursuant to the analysis of the Fourth Circuit Court of Appeal herein adopted and reiterated by this Court, taken together with the absence of material change in the posture of the case, in fact, or law from the Fourth Circuit’s certification forward, at the present time this case still meets all of the requirements for certification as a class action.” Thus, the district court concluded that the class action device remains the most effective, efficient, and fair method of concluding this matter.
 

 14It is from this judgment that Defendants now appeal.
 
 [2]
 

 Arguments on Appeal
 

 In their appeal, Defendants first argue that the trial court’s ruling should be reversed because under recent Louisiana law, mass tort cases cannot be certified as class action suits unless the individual cases share a common cause. In support of this claim, Defendants primarily rely on the Louisiana Supreme Court’s decertification rulings in
 
 Ford v. Murphy Oil, U.S.A., Inc.,
 
 96-2913 (La.9/9/97), 703 So.2d 542, and
 
 Brooks v. Union Pac. R.R.,
 
 08-2035 (La.5/22/09), 13 So.3d 546.
 

 In
 
 Ford,
 
 St. Bernard Parish residents brought an action against the operators of four petrochemical plants, claiming physical and property damages as result of emissions from the petrochemical facilities. After remand from federal court, the trial court certified a class for claims against two operators but denied certification as to the other operators, and an appeal was taken. This Court affirmed the trial court’s ruling.
 
 Ford v. Murphy Oil, U.S.A., Inc.,
 
 94-1218 (La.App. 4 Cir. 8/28/96), 681 So.2d 401. The Louisiana Supreme Court granted writs, reversed and ruled that the action did not present common questions that predominated over individual issues, as required for a class certification. The
 
 Ford
 
 Court observed:
 

 Ififar from offering the same facts, each class member will necessarily have to offer different facts to establish that certain defendants’ emissions, either individually or in combination, caused them specific damages on yet unspecified dates (which dates may run into the hundreds or even thousands). The causation issue is even more complicated considering the widely divergent types of personal, property and business damages claimed and considering each plaintiffs unique habits, exposures, length of exposures, medications, medical conditions, employment, and location of residence or business. In addition, each
 
 *800
 
 plaintiff will have to prove that the specific harm he suffered surpassed the level of inconvenience that is tolerated under C.C. art. 668. By the very nature of the claims that have been made, the length of time involved, and the vast geographical area in which the class members live, the degree of inconvenience or damage suffered will vary greatly as to the individual plaintiffs. The individualistic causation and liability issues are further magnified in this case by the claim that four* different sources of emissions are involved. This case simply strays too far from the “true” class action that the Legislature intended to allow.
 

 Ford,
 
 96-2913, pp. 11-12, 703 So.2d at 548-549.
 

 Accordingly, the Supreme Court reversed the class certification.
 

 In
 
 Brooks,
 
 property owners filed a mass-tort class action petition for damages against a railroad company, as well as city and parish governments, alleging that inadequate box culverts installed and maintained by the railroad, combined with inadequate drainage facilities designed and maintained by the city and parish, caused the owners’ property to flood during rainstorms. The trial court certified the class. On appeal, the Third Circuit Court of Appeal reversed the class certification.
 
 [3]
 
 The Louisiana Supreme Court granted writs but affirmed the Third Circuit’s ruling, determining that the trial court’s finding of a common cause was erroneous because as all the experts testified that the predominate cause of flooding would vary depending on whether an individual lived in the Northern, Southern or Eastern basin. Further, the Court found that plaintiffs’ claims that the combined fault of all three defendants contributed to the flooding in all three basins 16based on their theory of “interflow” between basins did not satisfy the common cause requirement, since the cause of the “interflow” flooding would still vary depending on the location of each particular household.
 
 Brooks,
 
 08-2035, p. 9.
 

 Based on the holdings in
 
 Ford
 
 and
 
 Brooks,
 
 Defendants assert that Plaintiffs’ claims are unsuitable for class action because the class members’ injuries do not result from a common cause. We find, however, that this case is distinguishable from
 
 Ford
 
 and
 
 Brooks
 
 on its facts. While the plaintiffs in
 
 Ford
 
 and
 
 Brooks
 
 attempted to certify a class in which multiple harm-inducing instrumentalities, owned by multiple defendants, were alleged to be the cause of plaintiffs’ harm, here, Plaintiffs’ alleged harm was caused by only one substance — lead, in buildings built and owned by HANO and operated by C.J. Brown. Moreover, unlike
 
 Ford
 
 and
 
 Brooks,
 
 Plaintiffs’ injuries do result from a common cause — Defendants’ alleged breach of their duties to Plaintiffs by allowing hazardous levels of lead to exist throughout HANO units for years — allegedly causing Plaintiffs to develop lead poisoning.
 

 Defendants also argue that, in this case, individual causation issues predominate over common questions. Defendants maintain that causation in the present case can only be proven on the basis of facts that are unique to each individual. In support of this assertion, Defendants cite to case law from other jurisdictions, as well as scientific literature, to argue that while evidence of an elevated blood level in a child indicates exposure to lead, any subsequent injury is dependent upon a number of other factors, e.g. genetics, individual medical history, environmental and socio-economic, unique to each individual.
 
 *801
 
 Thus, Defendants claim that Plaintiffs will need to present evidence from at least one 17doctor for every individual plaintiff, as well as supporting medical opinions and evidence of each plaintiffs- unique medical history. Therefore, Defendants assert that individual issues will predominate greatly over common issues at trial, thus necessitating decertification of the class.
 

 In
 
 Brooks,
 
 the Court held that “[a]n inquiry into predominance tests ‘whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.’ ”
 
 Id.,
 
 p. 9. The process prescribed by the Court in making this determination is to identify the substantive issues that will control the outcome, to assess which issues will predominate, and then to determine whether the issues are common to the class.
 
 Id.
 
 This process is ultimately meant to prevent the class from degenerating into a series of individual trials.
 
 Id.
 

 Here, Plaintiffs argue that the common issue is whether Defendants breached the standard of care owed Plaintiffs and that this issue predominates over any individual liability issues in the case. All of Plaintiffs’ claims are founded on an assertion of negligence on the part of Defendants in allowing hazardous levels of lead to exist throughout the HANO units, and that the lead in the HANO units was a substantial contributing factor in causing Plaintiffs’ lead poisoning. Each class member will have to prove causation based on the same set of operative facts. A determination of whether Defendants were negligent is therefore a substantive issue that will control the outcome of all of Plaintiffs’ claims. Because a determination of this issue will dispose of all of Plaintiffs’ claims one way or another, it predominates over any individual issues which may be presented by the circumstances surrounding the claim of an individual class member. Finally, because all of Plaintiffs’ claims are premised on an assertion of negligence on the part of Defendants, that predominant issue is common to the class. Because it is Impossible to reconcile the trial court’s finding of predominance with the analysis prescribed in
 
 Brooks,
 
 we find no manifest error in the trial court’s finding that the applicable law has not changed in any way that would warrant decertification in the present matter.
 

 Defendants also assert that the scientific research concerning lead poisoning has developed to such a degree since the original class certification that decertification is now warranted. However, the trial court has yet to rule on the admissibility of the scientific literature relied upon by Defendants in their trial court memoranda. We further note that Defendants’ motions to decertify were not based upon any scientific testimony, whether by sworn affidavit or deposition, elicited from expert witnesses. As such, we find that the trial court did not abuse its discretion in ruling that there has been no material chance in circumstances warranting class decertification.
 

 Finally, Defendants additionally argue that the trial court should have decer-tified the class because this case has become so unmanageable that any adverse verdict will result in a violation of Defendants’ due process rights. However, Defendants failed to raise this argument before the trial court. In fact, Defendants’ argument on this point is based, in part, on actions taken by the trial court after it orally denied Defendants’ motion to decer-tify class on January 14, 2009, and issued written reasons on May 14, 2009. It is well established that as a general matter, appellate courts will not consider issues raised for the first time, which were not pleaded in the trial court below and which the trial court has not addressed.
 
 John
 
 
 *802
 

 son v. State,
 
 02-2382, p. 4 (La.5/20/03), 851 So.2d 918, 921. Accordingly, we must disregard this assignment of error because it was not raised and briefed before the trial court.
 

 |¡,The jurisprudence indicates that a trial court’s ruling concerning a motion to decertify a class is reviewed under an abuse of discretion standard.
 
 Doerr v. Mobil Oil Co.,
 
 04-1789, p. 4 (La.App. 4 Cir. 6/14/06), 935 So.2d 231, 234. In
 
 Doerr,
 
 we held: “In the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of class, in the guise of motions to reconsider the class ruling.”
 
 Id.
 

 Here, Defendants’ arguments for decer-tification, as the trial court noted, are very similar to those we rejected in our earlier decision to certify the case as a class action. We do not find that there has been a material change in the facts, law or circumstances since the initial class ruling that would warrant class decertification. Moreover, we find that this case is proper for class certification because common questions of law and fact predominate over individual issues of law and fact. Therefore, we conclude that the trial court did not abuse its discretion in denying Defendants’ motions to decertify and we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 [1]
 

 . See
 
 Billieson v. City of New Orleans,
 
 98-1232 (La.App. 4 Cir. 3/3/99), 729 So.2d 146
 

 [2]
 

 . Defendants also filed an application for supervisory writ with this Court (No. 2009-OS 11) seeking review of this same judgment, which, by Order of this Court, has been consolidated with this appeal. At the outset, we note that a judgment denying Defendants’ motions to decertify the class is an interlocutory judgment. The Louisiana legislature amended Article 2083, effective January 1, 2006, and in its present form, Article 2083 provides that an interlocutory judgment is appealable only when expressly provided by law. La.Code Civ. Proc. art. 2083(C). The denial of a motion to decertify a class action is an interlocutory judgment that is immediately appealable by law.
 
 Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.,
 
 07-146, 07-512, p. 7 (La.App. 3 cir. 12/12/07), 971 so.2d 1257, 1263. Moreover, since Defendants timely filed an application for supervisory writ seeking review of this judgment, which has been consolidated with this appeal, we will exercise our supervisory jurisdiction to review this judgment on appeal.
 

 [3]
 

 .
 
 Brooks v. Union Pac. R.R.,
 
 07-1427 (La.App. 3 Cir. 6/4/08), 985 So.2d 864.