TERRI F. LOVE, Judge.
| ] This appeal arises from a motion to decertify, based on changes in law and circumstances, a class of plaintiffs claiming damages allegedly suffered as a of the unauthorized placing of confidential medical records and documents in a hospital parking lot where they were subjected to public view and taking. The trial court denied the defendant’s motion to decertify. We find that the trial court did not abuse its discretion by denying the motion to decertify the class because there are no material changes in the facts, circumstances, or law warranting decertification at this stage in the proceedings. Therefore, we affirm.

FACTUAL HISTORY

Tenet Health Systems Hospitals, Inc. was the operator of Jo Ellen Smith Medical Center (“JESMC”), which was located on or around Patterson Drive in New Orleans, in 1996. Adjacent to JESMC was Jo Ellen Smith Psychiatric Hospital (“JESPH”), operated by P.I.A. Westbank, Inc. In 1996, JESPH was closed and the record custodian for JESMC was instructed by the administrator or assistant administrator of JESMC to empty certain offices in the JESPH building.
|2The plaintiffs allege that on or about April 23, 1996, Jo Ellen Smith Psychiatric Hospital (“JESPH”) released without patient authorization confidential medical records of more than 5,649 patients by placing them in the hospital parking lot where they were subjected to public view and scrutiny. These documents were placed in the parking lot along with office furniture and office items which attracted passers-by who allegedly rifled through the discarded documents. The records in question were not retrieved or secured by defendants for a period of approximately ten days to two weeks.
According to deposition testimony, some of the documents left unattended in the parking lot were taken by passers-by. Some of the records retrieved from the parking lot were transferred to the Orleans Parish District Attorney’s office where the documents were reviewed to determine whether criminal charges would be filed in connection with their disposal. Those documents revealed the patient names, addresses, and other patient identifying information — including psychiatric *658 diagnoses and related psychiatric information — of 5,649 JESPH patients.
Additionally, the plaintiffs allege that some or all of the records were further exposed to unauthorized individuals after former JESPH employees retrieved and kept documents found in the parking lot. Victor Lloyd (“Lloyd”) allegedly retrieved and kept documents including inquiry and intake sheets containing patient identifying information. The record also indicates that Lloyd possessed a two-volume register listing every psychiatric patient admitted to JESPH between |s1981 and 1992. After local and electronic media reported the documents in the hospital parking lot, the defendants retrieved and secured the remainder of the documents; however, these documents cannot be found or any internal memos regarding the incident.
As a result of the media attention and the alleged disclosure, former psychiatric patients and/or patient representatives called the hospital after learning of the disclosure, to inquire as to whether their information and/or records were among the documents found in the parking lot.

PROCEDURAL HISTORY

Plaintiffs filed their original class action petition on March 26, 1997, and after amendments, plaintiffs filed their second amended and restated class action petition on February 17, 2004. The class was certified by the trial court on March 29, 2005, which defined the class as:
All patients of Jo Ellen Smith Psychiatric Center, including persons who called the Jo Ellen Smith Psychiatric Center crisis line(s), whose name or other patient identifying information was contained in any document released into the parking lot on Patterson Drive on or about April 23, 1996 by Tenet Health-System Hospitals, Inc., P.I.A. Westbank, INC. or Tenet Healthcare Corporation.
This Court affirmed the trial court’s ruling granting class certification in Doe v. Jo Ellen Smith Medical Foundation, 05-1161 (La.App. 4 Cir. 5/24/06), 932 So.2d 758 (unpub.), and the Louisiana Supreme Court affirmed this Court’s and the trial court’s rulings in Doe v. Jo Ellen Smith Medical Foundation, 06-1617 (La.9/29/06), 937 So.2d 871.
^Subsequently, both parties agreed to send legal notice to the putative class members by multi-state publication. Following notice to the class members by publication, no class member opted out.
In January 2011, pursuant to La.C.C.P. Art. 593.1 as in effect in 1996, the district court issued a case management order bifurcating the case into two trial phases: Phase I to determine liability and common damages; and Phase II to determine any individual damages. JESPH moved for summary judgment on plaintiffs’ claim for common damages, and the trial court denied the motion. JESPH sought supervisory review with this Court which was denied, as well as sought review with the Louisiana Supreme Court, which was denied.[1]
Thereafter, JESPH filed a motion for class decertification alleging changes in law and circumstances surrounding the present matter. JESPH argued that recent rulings from the United States Supreme Court and the Louisiana Supreme Court “fundamentally changed the law of class certification.” JESPH alleged that a party seeking certification must show that the class members’ claims depend on a common contention capable of classwide resolution proven with common evidence. *659 Additionally, JESPH argued that the circumstances in this case changed, mandating decertification. First, JESPH argued that because the putative class can recover common damages irrespective of knowledge, JESPH is precluded from challenging the constitutionality of any award. Second, JESPH argued that any alleged injuries to the class representatives are unique, and therefore their claims are not typical of the class. Third, during post-certification discovery plaintiffs alleged each class member is entitled to damages between $50,000 and $150,000, | Rand JESPH argues that such high claims would result in unfairness to absent class members. The trial court denied the motion finding that no material change in the facts, circumstances, or law warranted de-certification. An appeal to this Court followed.

STANDARD OF REVIEW

The Louisiana Supreme Court in Price v. Martin, 11-0853, pp. 7-8 (La.12/6/11), 79 So.3d 960, 967 explained:
In reviewing a judgment on class certification, the district court’s factual findings are subject to the manifest error standard, while the court’s ultimate decision regarding whether to certify the class is reviewed under the abuse of discretion standard. [Brooks v. Union Pacific Railroad Co., 08-2035, p. 10 (La.5/22/09), 13 So.3d 546, 554.] Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo. [Id., 08-2035 at p. 11, 13 So.3d at 554.]

MOTION TO DECERTIFY

The requirements for class certification applicable to the present action are governed by La.C.C.P. Arts. 591-597. The current form of articles 591-597, however, applies only to actions filed on or after July 10, 1997.[2] Thus, the pre-1997 Louisiana Class Action Statute applies in this case and provides in pertinent part, as follows:[3]
Art. 591 Prerequisites
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
Common to all members of the class; or
| (¡Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
Art. 592. Representation
One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
The following three requirements must be met in order for certification of a class action:
“1. a class so numerous that joinder is impractical; 2. the joinder as parties to the suit of one or more parties who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class; and 3. a ‘common character’ between the rights of the representatives of the class and the absent members of the class.” Billieson v. City of New Orleans, 98-1232, p. 6 (La.App. 4 Cir. 3/3/99), 729 So.2d 146, 152.
*660 Additionally, the Louisiana Supreme Court has held, “in our analysis of certification under the pre-1997 statute, this Court has required, among other factors, that there be questions of law or fact common to the class and that those questions predominate over questions affecting only individual members.” Brooks, 08-2035 at p. 14, 13 So.3d at 556.
A motion for decertification is proper when there has been a material change in the facts, law, or circumstances since the initial class ruling. Billieson v. City of New Orleans, 09-0410, p. 9 (La.App. 4 Cir. 11/12/09), 26 So.3d 796, 802. Furthermore,
[i]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class, in the guise of motions to reconsider the class ruling.
Id. (citing Doerr v. Mobil Oil Corp., 04-1789, p. 4 (La.App. 4 Cir. 6/14/06), 935 So.2d 231, 234).
17JESPH contends that decertification is mandated because of recent changes in the law and circumstances surrounding this case. JESPH relies on the United States Supreme Court decision in Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), and the Louisiana Supreme Court decision in Price v. Martin, 11-0853 (La.12/6/11), 79 So.3d 960, to support its contention that these cases “fundamentally altered the rules governing class certification” in Louisiana; and thus, the class representatives in this case no longer satisfy the commonality and predominance requirements. JESPH suggests 'that this Court should focus less on the factual circumstances in Wal-Mart and Price and more on “the reasoning, analysis, and legal rules applied in reaching [the] result.” Nevertheless, making factual distinctions and/or comparisons is essential to understanding the Courts’ application of the law for class certification. Notably, JESPH has not demonstrated to this Court how the decisions in Wal-Mart and Price are analogous to the present matter and mandate decertification. On appeal, JESPH argues there is neither common question of law or fact sufficient to support class treatment, nor a common question that predominates over individualized questions.

Wal-Mart, Inc. v. Dukes

JESPH argues that Wal-Mart provides guidance as to what common questions matter for purposes of class certification. Wal-Mart involved a plaintiff class of 1.5 million female employees who claimed damages resulting from Wal-Mart’s alleged discrimination against women in violation of Title VII of the Civil Rights Act of 1964 common to all Wal-Mart’s female employees. Wal-Mart, — U.S. at-, 131 S.Ct. at 2544. Namely, the plaintiff class claimed local managers exercised their discretion over pay and promotions disproportionately in favor of |smen, which had an unlawful disparate impact on its female employees. Id. The district court certified the class finding that the plaintiffs satisfied Fed. R. Civ. Proc. Rule 23(a), and the Ninth Circuit affirmed concluding that plaintiffs met Rule 23(a)(2)’s commonality requirement. Id. The Supreme Court reversed, finding that the commonality requirement was not consistent with Rule 23(a).
The crux of the case, the Supreme Court determined, was the commonality requirement. Id. — U.S. at-, 131 S.Ct. at 2551. Commonality calls for the plaintiff to demonstrate that the class members suffered from the same injury, “this does not mean merely that they have all suf *661 fered a violation of the same provision of law.” Id. Rather, the plaintiffs’ claims “must depend upon a common contention ... of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke.” Id. — U.S. at-, 131 S.Ct. at 2551. In Wal-Mart, the Supreme Court found that plaintiffs failed to submit convincing evidence of companywide discriminatory pay and promotion policy. Further, because the Court found that there was “nothing to unite all of the plaintiffs’ claims, since ... the same employment practices do not ‘touch and concern all members of the class,’ ” the Court concluded that plaintiffs did not establish a common question and reversed the district court’s granting of class certification. Id., — U.S. at-, 131 S.Ct. at 2556-57, n. 10.
The facts in Wal-Mart are distinguishable from the instant matter. In Wal-Mart, the employees held different positions, at different levels, for various periods of time, in thousands of stores across fifty states, with male and female supervisors, and also subject to varying regional policies. Id., — U.S. at-, 131 S.Ct. at 2557. The Supreme Court noted that it is not enough that all class members 19worked at Wal-Mart or even that they all suffered a violation of Title VII. Id., — U.S. at-, 131 S.Ct. at 2551. The plaintiff class in Wal-Mart did not meet the commonality requirement because Title VII ... can be violated in many ways ... [and] the mere claim by employees of the same company that they have suffered a “Title VII injury or even a disparate-impact injury, gives no cause to believe that all their claims can productively be litigated at once.” Id. Instead, class members’ claims must depend on a common contention such as “the assertion of discriminating bias on the part of the same supervisor.” Id.
In the instant case, the common question of fact remains whether JESPH exposed to public view and scrutiny privileged documents containing patient names or other identifying information without the prior written consent of each patient. Additionally, as this Court observed when it previously affirmed class certification, “the single most important issue to be determined is the duty of appellants and their possible liability for this incident.”[4] These issues of law and fact are not only common to all class members, but also predominate over questions raised by individual class members. Thus, even in light of Wal-Mart, this Court finds the trial court did not abuse its discretion in denying JESPH’s motion for decertification.

Price v. Martin

We also find Price to be distinguishable. In Price, the plaintiffs sued wood treatment companies alleging that creosote-treated railroad tie operations damaged their property over a sixty-six year period during which there were three different owners of the companies and legal standards for creosote treatment and storage and disposal had changed over the period of time in question. Price, 11-0853 at p. 1—2, 79 So.3d at 964. The Louisiana Supreme Court held that, under Wal-Mart, plaintiffs failed to identify a common question and therefore could not establish either the commonality or predominance requirements. Id., 11-0853 at p. 11, 79 So.3d at 969. Specifically, the Court explained that the plaintiffs could not establish a common issue of fact on the basis *662 “simply that the emissions occurred,” but instead had to identify common evidence showing “that the emissions resulted in the deposit of unreasonably elevated levels of toxic chemicals on plaintiffs’ properties.” Id. 11-0853 at p. 11, 79 So.3d at 969-70.
Likewise, the Court reasoned that whether the defendant owed a duty was not a common question of law relevant to class certification because “the mere finding of a duty not to pollute will do little to advance the issues in [Price ].” Id. 11-0853 at p. 21, 79 So.3d at 975.
Breach and Causation
The Price court held that issues of breach and causation were not capable of classwide resolution based on common evidence. Id. 11-0853 at p. 12, 79 So.3d at 970. On the issue of breach, the Court focused on the sixty-six year period of emissions and that the defendants’ operation of the facility occurred at varied and unspecified times, and changed over that period. Id. The Court noted that depending on the date of emission different defendants could be responsible. Id. 11-0853 at p. 13, 79 So.3d at 970.
The Court also noted that the legal standards applying to the facility’s operations changed during the period in question. Id. Thus, because the issue of breach would hinge on different conduct, by different defendants, at different times, under different legal standards, and because plaintiffs could not offer evidence to demonstrate that the issue of breach could be resolved from a common | ^nucleus of facts, the Court held that the emissions or the defendants’ conduct did not touch all members of the class.
On the issue of causation, the Court held that the plaintiffs needed to demonstrate through common evidence that chemicals from the facility were found on the plaintiffs’ property. Id. 11-0853 at p. 14, 79 So.3d at 971. However, the Court concluded that because of the different types of damages (personal, property, and business) as well as the plaintiffs’ varying habits, exposures, and lengths of exposure, the issue of causation could not be resolved on a classwide basis. Id. 11-0853 at p. 17-18, 79 So.3d at 972-73.
The present matter is distinguishable as it involves the alleged unauthorized disclosure of a finite number of documents, over a period of approximately ten days to two weeks in April 1996. Further, the same alleged conduct of JESPH is attributable to the same alleged damage to each class member’s right to privacy. Moreover, the documents recovered identify the 5,649 class members as psychiatric patients.
Public Viewing
JESPH argues that Price undermines class certification in this case because the putative class failed to offer proof that the allegedly negligent exposure of the documents resulted in the actual public viewing of each class members’ information and would require thousands of individual trials. JESPH argues that no such evidence exists. JESPH further suggests to this Court that a rigorous analysis requires thousands of mini-trials to determine whether third parties actually viewed each individual class member’s protected information.
The record before this Court establishes that specific third party members of the public actually viewed the documents containing psychiatric patient identifying | ^information. The record indicates there is witness testimony from former JESPH employees Victor Lloyd (“Lloyd”) and Jennie Schuyler (“Schuyler”) wherein both allege that actual public viewing of the confidential documents occurred. Lloyd testified that he inspected records contained in filing cabinets and file boxes left in the parking lot which disclosed the psy- *663 ehiatric histories, diagnoses, and other psychiatric information of JESPH patients. Additionally, Schuyler testified,
Most of what I saw on the ground were ... a[n] initial assessment ... some of the assessments, in-depth assessments. Some of them were clipped to the initial phone call ... Vic [Lloyd] then came over to me and showed me a piece of paper — I guess it was a client he recognized the name maybe — where a lady had said she had been sexually abused as a child, which made him really upset.
[[Image here]]
He showed me two leather bound logs. I think they were old logs, where when calls came in they logged the calls in. And there were names, their diagnostic codes ...
[[Image here]]
I saw bills ... [I]t was a list of, you know, numbers with treatments, therapies, that sort of thing.
Schuyler also testified that she was aware of two other people who saw or viewed patient identifying information.
JESPH suggests that for there to be a common answer as to whether the public viewed class members’ patient identifying information, a single witness would have to testify that he or she read the patient identifying information for each and every class member. JESPH argues that this prospect is individualized and not a common answer capable of classwide resolution. JESPH’s interpretation, however, suggests that the class representatives must take an additional step to prove that specific third parties actually saw the disclosed information. We disagree with JESPH’s interpretation.
11sThe evidence indicates that numerous individuals viewed portions of the medical records. Lloyd admitted when he came upon the medical records in the parking lot the records appeared to have been “rummaged through.” Additionally, he admitted he witnessed people in the parking lot digging through boxes. Moreover, records were seized, held, and reviewed by the District Attorney’s Office while it deliberated on whether to file charges in connection with the disposal of records. Accordingly, the class representatives have in fact offered evidence of actual viewing of the medical records by third parties sufficient to satisfy the common evidence requirement in Price. Therefore, we find this argument without merit.

Common Damages

JESPH also argues that the class cannot be certified because JESPH has a due process right to challenge any award of common damages as constitutionally excessive, and this defense cannot be resolved on a classwide basis. JESPH claims that it “must be allowed to challenge any award of ‘common’ presumed damages as unconstitutionally excessive, unreasonable, and disproportionate to the amount of harm suffered by each class member.”[5] JESPH avers that this defense cannot be adjudicated on a classwide basis because it will require an inquiry into the specific amount of harm suffered by each class member to determine whether the award imposed is permissible.
Although, affirmative defenses should be considered when making class certification decisions, the potential complication is not enough to decertify the class. Duhé v. Texaco, Inc., 99-2002 p. 25 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1085. JESPH’s argument suggests that this *664 Court should assume that the common damages will be excessive, and thus, precluding JESPH from asserting its affirmative defense of an unconstitutionally excessive damage award. The issue of damages is within the province of the trier of fact, and not before this Court.
Additionally, La.C.Cr.P. Art. 593.1(C) (1996) provides in pertinent part, that the trial court may adopt a management plan that provides for separate trials for, among others:
“(2) Determination of any item of damage common to the class and the basis for assessment thereof. (3) Assessment of common damages on the basis determined in (2) above or on such basis as may be appropriate in the absence of any prior determination of the basis thereof. (4) Determination and assessment of individual damages not common to the class ...”
The trial court ordered the bifurcation of the trial with Phase I only to determine liability and common damages caused to all class members irrespective of knowledge and Phase II to determine individualized damages. Moreover, “throughout the class action, the court has extensive powers to insure the efficient conduct of the action, and it has the power to revoke, alter or modify the certification order as later developments in the litigation necessitate.” [6] Thus, considering the foregoing, we find the trial court did not abuse its discretion in denying JESPH’s motion for decertification.
We pretermit discussion on the typicality and fairness issues raised by JESPH. As the arguments regarding typicality and fairness focus on commonality and predominance among the putative class members, both issues are addressed as part of this Court’s discussion on commonality and predominance. Moreover, JESPH argues had the trial court engaged in a rigorous analysis as described in | v,Price, “it would have decertified the class.” The record demonstrates that the trial court acknowledged that “there has been a shift” in the law; however, in the trial court’s view, the facts in this case did not mandate decertifi-cation. Thus, based on our review of the record, we find JESPH’s argument that the trial court failed to conduct a “rigorous analysis” to be without merit.

FRIVOLOUS APPEAL

The class representatives argue that this Court should impose sanctions on JESPH for attempting to reargue the same positions denied on previous occasions and to avoid trial. This Court has previously explained:
“Damages for frivolous appeals, like sanctions at the trial court level, are utilized to curtail the filing of appeals that are intended to delay litigation, harass another party, or those that have no reasonable basis in fact or law.” Johnson v. Johnson, 08-0060, p. 5 (La.App. 4 Cir. 5/28/08), 986 So.2d 797, 801. Appellate courts “shall render any judgment which is just, legal, and proper upon the record on appeal” and “may award damages, including attorney fees, for frivolous appeal....” La. C.C.P. art. 2164. The statute permitting frivolous appeal damages must be strictly construed in favor of the appellant, as it is penal in nature. Levy v. Levy, 02-0279, pp. 17-18 (La.App. 4 Cir. 10/2/02), 829 So.2d 640, 650.
Frivolous appeal damages will be awarded if the appellant is trying to “delay the action” or “if the appealing counsel does not seriously believe the *665 law he or she advocates.” Hester v. Hester, 97-2009, p. 5 (La.App. 4 Cir. 6/3/98), 715 So.2d 43, 46. An appeal may also be deemed frivolous if it does not present a “substantial legal question.” Tillmon v. Thrasher Waterproofing, 00-0395, p. 8 (La.App. 4 Cir. 3/28/01), 786 So.2d 131, 137. “Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted” due in part to the possible chilling effect on the appellate process. Tillmon, 00-0395, p. 8, 786 So.2d at 137.
Hunter v. Maximum Grp. Behavioral Servs., Inc., 10-0930, p. 6 (La.App. 4 Cir. 3/16/11), 61 So.3d 735, 739.
|,(¡Nothing in the record indicates that JESPH filed this appeal in an attempt to delay the present action. The appellate brief submitted by counsel advocates certain interpretations of recent case law to support its argument for class decertification. Because the record before this Court does not suggest that the present appeal is unquestionably frivolous, the request for sanctions is denied.

DECREE

For the reasons set forth above, we find that JESPH has failed to prove that the recent decisions in Wal-Mart and Price warrant class decertification. In addition, we find that no material change occurred in the facts and circumstances of this case to justify decertification. Thus, we find that the trial court did not abuse its discretion in denying JESPH’s motion for de-certification and affirm. The class representatives’ request for frivolous appeal sanctions is denied.
AFFIRMED

. Doe v. Jo Ellen Smith Medical Foundation, 12-0096 (La.App. 4 Cir. 2/2/12) (unpub.); Doe v. Jo Ellen Smith Medical Foundation, 12-0510 (La.3/30/12), 85 So.3d 128.

. Acts 1997, No. 839, § 3.

. La. C.C.P. Arts. 591-92 (1996).

. Doe v. Jo Ellen Smith Medical Foundation, 05-1161 (La.App. 4 Cir. 5/24/06), 932 So.2d 758 (unpub.).

. JESPH avers that it did not raise the constitutionality of class certification until recently because the trial court only recently “authorized [the class representatives] to seek damages on behalf of the entire class without proof of actual damages.”

. John Doe v. Jo Ellen Smith Medical Foundation, 05-1161 (La.App. 4 Cir. 5/24/06), 932 So.2d 758 (unpub.)(citing La. C.C.P. Art. 593.1 (1996)).